# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| **ILIA KOLOMINSKY, Individually and On Behalf of All Others Similarly Situated,** | No. |
| **Plaintiff,** | <u>**CLASS ACTION**</u> |
| **v.** | |
| **ROOT, INC., ALEXANDER TIMM, DANIEL ROSENTHAL, MEGAN BINKLEY, CHRISTOPHER OLSEN, DOUG ULMAN, ELLIOT GEIDT, JERRI DEVARD, LARRY HILSHEIMER, LUIS VON AHN, NANCY KRAMER, NICK SHALEK, and SCOTT MAW,** | <u>**DEMAND FOR JURY TRIAL**</u> |
| **Defendants.** | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Ilia Kolominsky ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Root, Inc. ("Root" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Root securities between October 28, 2020 and March 8, 2021, both dates inclusive (the "Class Period"); and/or (b) Root Class A common stock pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about October 28, 2020 (the "IPO" or "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Root provides insurance products and services in the U.S. The Company has historically focused on auto insurance and operates a direct-to-consumer model that serves customers primarily through mobile applications, as well as through the Company's website.

3. Leading up to and following the IPO, Root described itself as an innovator in the personal insurance space with a new data- and technology-driven business model that was ready to disrupt traditional insurance markets and capture disproportionate market share, in part because of the Company's telematics-driven approach to insurance—*i.e.*, the collection and transmission of vehicle-use data through devices.

4. On October 5, 2020, Root filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective on October 27, 2020 (the "Registration Statement").

5. On October 28, 2020, Root conducted the IPO, selling 26.8 million shares of the Company's Class A common stock to the public at $27.00 per share for total approximate proceeds of $724.43 million.

6. On October 29, 2020, Root filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, together with the Registration Statement, the "Offering Documents").

7. The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) Root would foreseeably fail to generate positive cash flow for at least several years following the IPO; (ii) accordingly, the Company would foreseeably require significant cash infusions to meet its cash flow needs; (iii) notwithstanding the Defendants'

touting of Root's purportedly unique, data-driven advantages, several of the Company's established industry peers in fact possessed significant competitive advantages over Root with respect to, *inter alia*, telematics data and data engagement; and (iv) as a result, the Offering Documents and Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

8. On March 9, 2021, Bank of America ("BofA") Securities analyst Joshua Shanker ("Shanker") initiated coverage of Root with an "Underperform" rating on the premise that the Company is unlikely to be cash flow positive until 2027, finding that Root "will require not insignificant cash infusions from the capital markets to bridge its cash flow needs." Shanker also noted that insurers Progressive, Allstate, and Berkshire Hathaway's Geico would continue to impede the Company's profitability, with Progressive and Allstate having a "sizable advantage over Root in terms of amount of [telematics] data as well as engagement with the data" used to price their auto insurance.

9. On this news, Root's stock price fell $0.18 per share, or 1.46%, to close at $12.17 per share on March 9, 2021, representing a total decline of 54.93% from the Offering price.

10. At the time this Complaint was filed, Root's stock price has continued to trade below the $27.00 per share Offering price, damaging investors.

11. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15

U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.     Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Root is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

15.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

16.     Plaintiff, as set forth in the attached Certification, purchased or otherwise acquired Root securities during the Class Period and/or Root Class A common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.     Defendant Root is a Delaware corporation with principal executive offices located at 80 E. Rich Street, Suite 500, Columbus, Ohio 43215.  The Company's common stock trades in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "ROOT."

18.     Defendant Alexander Timm ("Timm") has served as Root's Chief Executive Officer and a Director of the Company at all relevant times.  Timm signed or authorized the signing of the Registration Statement.

19.     Defendant Daniel Rosenthal ("Rosenthal") has served as Root's Chief Financial Officer and a Director of the Company at all relevant times.  Rosenthal signed or authorized the signing of the Registration Statement.

20.     Defendants Timm and Rosenthal are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

21.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of Root's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of Root's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Root, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

22.     Root and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

23.     Defendant Megan Binkley ("Binkley") served as Root's Chief Accounting Officer at the time of the IPO.  Binkley signed or authorized the signing of the Registration Statement.

24.     Defendant Christopher Olsen ("Olsen") has served as a Director of Root at all relevant times.  Olsen signed or authorized the signing of the Registration Statement.

25.     Defendant Doug Ulman ("Ulman") has served as a Director of Root at all relevant times.  Ulman signed or authorized the signing of the Registration Statement.

26.     Defendant Elliot Geidt ("Geidt") has served as a Director of Root at all relevant times.  Geidt signed or authorized the signing of the Registration Statement.

27.     Defendant Jerri DeVard ("DeVard") has served as a Director of Root at all relevant times.  DeVard signed or authorized the signing of the Registration Statement.

28.     Defendant Larry Hilsheimer ("Hilsheimer") has served as a Director of Root at all relevant times.  Hilsheimer signed or authorized the signing of the Registration Statement.

29.     Defendant Luis von Ahn ("von Ahn") has served as a Director of Root at all relevant times.  von Ahn signed or authorized the signing of the Registration Statement.

30.     Defendant Nancy Kramer ("Kramer") has served as a Director of Root at all relevant times.  Kramer signed or authorized the signing of the Registration Statement.

31.     Defendant Nick Shalek ("Shalek") has served as a Director of Root at all relevant times.  Shalek signed or authorized the signing of the Registration Statement.

32.     Defendant Scott Maw ("Maw") has served as a Director of Root at all relevant times.  Maw signed or authorized the signing of the Registration Statement.

33.     Defendants Timm, Rosenthal, Binkley, Olsen, Ulman, Geidt, DeVard, Hilsheimer, von Ahn, Kramer, Shalek, and Maw are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

34.     As directors, executive officers, and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Root Class A

- 6 -

common stock in the IPO for their own benefit and the benefit of the Company. The Securities Act Individual Defendants were key members of the IPO working group and executives of the Company who pitched investors to purchase the shares sold in the IPO.

35.     Root and the Securities Act Individual Defendants are sometimes referred to herein collectively as the "Securities Act Defendants."

36.     The Exchange Act Defendants and the Securities Act Defendants are sometimes collectively, in whole or in part, referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

37.     Root provides insurance products and services in the U.S. The Company was historically focused on auto insurance, and operates a direct-to-consumer model that serves customers primarily through mobile applications, as well as through the Company's website.

38.     Leading up to and following the IPO, Root described itself as an innovator in the personal insurance space with a new data- and technology-driven business model that was ready to disrupt traditional insurance markets and capture disproportionate market share through the Company's use of, among other things, telematics.

39.     On October 5, 2020, Root filed the Registration Statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective on October 27, 2020.

40.     On October 28, 2020, Root conducted the IPO, selling 26.8 million shares of the Company's Class A common stock to the public at $27.00 per share for total approximate proceeds of $724.43 million.

41.     On October 29, 2020, Root filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

**Materially False and Misleading Statements Issued in the Offering Documents**

42.     The Offering Documents included a table that purported to summarize Root's cash flow data for the years ended December 31, 2018 and 2019, as well as for the six months ended June 30, 2019 and 2020.  That table reported that net cash used in operating activities was $26.1 million and $127.2 million for the years ended December 31, 2018 and 2019, respectively, and $38 million and $62.4 million for the six months ended June 30, 2019 and 2020, respectively; that net cash used in investing activities was $20.6 million and $114 million for the years ended December 31, 2018 and 2019, respectively, and $45.6 million and $99.3 million for the six months ended June 30, 2019 and 2020, respectively; and that net cash provided by financing activities was $150.9 million and $535.5 million for the years ended December 31, 2018 and 2019, respectively, and $92.7 million and negative $13 million for the six months ended June 30, 2019 and 2020, respectively; all of which failed to fully apprise investors of the Company's foreseeable inability to generate positive cash flow for at least several years following the IPO.

43.     The Offering Documents further downplayed the true scope and severity of Root's cash flow needs by stating, *inter alia*, "[w]e believe that our existing . . . cash flow from operations will be sufficient to support working capital and capital expenditure requirements for at least the next 12 months."

44.     Additionally, the Offering Documents purported to provide "many factors" that the Company's "future capital requirements will depend on," including:

> [I]nsurance premium growth rate, renewal activity, including the timing and the amount of cash received from customers, the expansion of marketing activities, the timing and extent of spending to support development efforts, the introduction of new and enhanced products, the continuing market adoption of offerings on our

platform, and the current uncertainty in the global markets resulting from the worldwide COVID-19 pandemic.

This generic recitation of various potential headwinds to Root's cash flow needs failed to impress upon investors the specific, current, and foreseeable risk of the Company's foreseeable inability to generate positive cash flow for at least several years following the IPO.

45. Moreover, throughout the Offering Documents, Root repeatedly juxtaposed its "revolution[ary]," "unique," "modern," "fundamentally reinvent[ed]," and "innovati[ve]" insurance business with "traditional" insurance models to highlight the Company's purported "massive competitive advantage and a barrier to entry that is insurmountable without an investment of time, resources and expertise akin to what [the Company] ha[s] invested since [its] founding."

46. For example, the Offering documents touted that, "[f]or centuries, traditional insurance companies have grouped people into risk pools and long relied on the 'law of large numbers' to produce acceptable pricing on an aggregate basis," whereas "Root is different" because the Company "use[s] technology to measure risk based on individual performance, prioritizing fairness to the customer," and that "[t]he way we design and deliver insurance is not a simple tweak to the traditional insurance model" because the Company is "fundamentally reinventing insurance through technology, data science and a maniacal focus on the customer."

47. Similarly, the Offering Documents represented that "[t]raditional methods of pooled risk assessment are not personalized and are inherently less precise given individual behavioral data is underutilized or not measured as a component of the insurance risk assessment process," whereas "[t]he Root advantage is derived from our unique ability to segment individual risk based on complex behavioral data, a customer experience built for ease of use and a product offering made possible with our full-stack insurance structure."

48.     With specific respect to Root's purported auto-insurance advantage through its proprietary telematics, the Offering Documents represented, *inter alia*, that "[o]ur reinvention of auto insurance is made possible by the transparent collection and analysis of driving performance"; that "[b]y collecting and synthesizing massive amounts of rich, sensory behavioral data across thousands of driving variables, including distracted driving, we strive to price based more on causality than correlation," which "allows us to price our customers' policies more fairly"; and that, "[w]hile the notion of telematics has been around for decades, only recently has mobile technology made the concept adoptable at large scale."

49.     Additionally, the Offering Documents repeatedly touted how Root's purported advantages ensured the Company's "disproportionate" market share, stating, *inter alia*, "[w]e believe we are best positioned to gain disproportionate market share during this disruptive evolution of the insurance industry"; that "the first player to reach scale with innovative data and machine-learning technology will have a profound risk segmentation and cost advantage, disproportionately taking market share"; and that "[c]ompetitors would face significant challenges to injecting an approach similar to ours into a traditional insurance model, absent a ground-up technology rebuild and years of data collection," which "is the essence of the structural moat that we believe has enabled us to become a leader in this race for data-driven scale in the insurance industry."

50.     The statements referenced in ¶¶ 42-49 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Specifically, the Offering Documents made false and/or misleading statements and/or failed to

disclose that: (i) Root would foreseeably fail to generate positive cash flow for at least several years following the IPO; (ii) accordingly, the Company would foreseeably require significant cash infusions to meet its cash flow needs; (iii) notwithstanding the Defendants' touting of Root's purportedly unique, data-driven advantages, several of the Company's established industry peers in fact possessed significant competitive advantages over Root with respect to, *inter alia*, telematics data and data engagement; and (iv) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

### Materially False and Misleading Statements Issued During the Class Period

51.     The Class Period begins on October 28, 2020, when Root's securities began publicly trading on the NASDAQ pursuant to the materially false and misleading statements or omissions contained in the Offering Documents.

52.     On October 29, 2020, Root filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.  The Prospectus contained all the statements referenced in ¶¶ 42-49, *supra*, regarding the Company's purported cash flow and auto-insurance business prospects.

53.     The statements referenced in ¶ 52 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Root would foreseeably fail to generate positive cash flow for at least several years following the IPO; (ii) accordingly, the Company would foreseeably require significant cash infusions to meet its cash flow needs; (iii) notwithstanding the Defendants' touting of Root's purportedly unique, data-driven advantages, several of the Company's established industry peers

in fact possessed significant competitive advantages over Root with respect to, *inter alia*, telematics data and data engagement; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

54.     On December 1, 2020, post-market, Root issued a press release announcing the Company's third quarter 2020 financial and operating results—the Company's first financial release following the IPO—which were accessible via a letter to shareholders on the Company's website.  That letter reported third quarter earnings per share ("EPS") under generally accepted accounting principles ("GAAP") of -$2.20 per share, missing consensus estimates by $1.79 per share, as well as revenues of $50.5 million, or down 36.6% year-over-year, missing consensus estimates by $19.28 million.

55.     On this news, Root's stock price fell $2.30 per share, or 13.53%, to close at $14.70 per share on December 2, 2020.  Despite this decline in the Company's stock price, Root's securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of the Exchange Act Defendants' continued misrepresentations regarding Root's cash flow needs and auto-insurance business prospects.

56.     For example, on December 2, 2020, Root filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the third quarter ended September 30, 2020 (the "3Q20 10-Q").  The 3Q20 10-Q included a table that purported to summarize Root's cash flow data for the nine months ended September 30, 2019 and 2020.  That table reported that net cash used in operating activities was $72.6 million and $94.8 million for the nine months ended September 30, 2019 and 2020, respectively; that net cash used in investing activities was $82.3 million and $103.1 million for the nine months ended September 30, 2019 and

2020, respectively; and that net cash provided by financing activities was $443.7 million and $0.1 million for the nine months ended September 30, 2019 and 2020, respectively; all of which failed to fully apprise investors of the Company's foreseeable inability to generate positive cash flow for at least another several years.

57.     The 3Q20 10-Q further downplayed the true scope and severity of Root's cash flow needs by stating, *inter alia*, "[w]e believe that our existing . . . cash flow from operations, along with the net proceeds from our IPO, will be sufficient to support working capital and capital expenditure requirements for at least the next 12 months."

58.     Additionally, the 3Q20 10-Q touted Root's purported advantages over competitors using traditional auto-insurance models, stating, in relevant part, that "our core product is automobile insurance, and we believe we are the only P&C [property and casualty] insurance carrier with a scaled proprietary telematics solution designed to price an entire book of business"; that, "[b]y collecting and synthesizing massive amounts of rich, sensory behavioral data across thousands of driving variables, including distracted driving, we strive to price based more on causality than correlation," which "allows us to price our customers' policies more fairly—and in turn they pay premiums commensurate with their individual risk profile"; and that, "[s]ince launch, our model has delivered rapid growth and continuously improving operating results."

59.     Appended as exhibits to the 3Q20 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Exchange Act Individual Defendants certified that "[t]he [3Q20 10-Q] fully complies with the requirements of Section 13(a) or Section 15(d) of the Exchange Act" and that "[t]he information contained in the [3Q20 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

- 13 -

60.     The statements referenced in ¶¶ 56-59 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Root would foreseeably fail to generate positive cash flow for at least several years following the IPO; (ii) accordingly, the Company would foreseeably require significant cash infusions to meet its cash flow needs; (iii) notwithstanding the Defendants' touting of Root's purportedly unique, data-driven advantages, several of the Company's established industry peers in fact possessed significant competitive advantages over Root with respect to, *inter alia*, telematics data and data engagement; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

61.     On February 25, 2021, post-market, Root issued a press release announcing the Company's fourth quarter and full year 2020 financial and operating results, which were accessible via a letter to shareholders on the Company's website.  That letter reported fourth quarter GAAP EPS of -$0.72, missing consensus estimates by $0.07 per share.

62.     On this news, Root's stock price fell $2.93 per share, or 17.84%, to close at $13.49 per share on February 26, 2021.  Despite this decline in the Company's stock price, Root's securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of the Exchange Act Defendants' continued misrepresentations regarding Root's cash flow needs and auto-insurance business prospects.

63.     For example, on March 4, 2021, Root filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the fourth quarter and full year ended December 31, 2020 (the "2020 10-K").  The 2020 10-K included a table that purported to

summarize Root's cash flow data for the years ended December 31, 2018, 2019, and 2020. That table reiterated the same figures for net cash used in operating activities, net cash used in investing activities, and net cash provided by financing activities for the years ended December 31, 2018 and 2019 as referenced in ¶ 42, *supra*; reported net cash used in operating activities of $287.2 million, net cash used in investing activities of $114.1 million, and net cash provided by financing activities of $1.1 billion for the year ended December 31, 2020; and failed to fully apprise investors of Root's foreseeable inability to generate positive cash flow for at least another several years.

64.     The 2020 10-K also contained substantively the same statements as referenced in ¶¶ 44 and 57, *supra*, reciting various potential headwinds to Root's cash flow needs that failed to impress upon investors the specific, current, and foreseeable risk of the Company's inability to generate positive cash flow for at least several years, and that otherwise downplayed the true scope and severity of Root's cash flow needs.

65.     Additionally, the 2020 10-K contained substantively the same statements as referenced in ¶¶ 46-48, *supra*, which juxtaposed Root's purportedly revolutionary insurance business model with established market competitors, and touted the Company's proprietary telematics that were purportedly reinventing auto-insurance.

66.     Appended as exhibits to the 2020 10-K were substantively the same SOX certifications as referenced in ¶ 59, *supra*, signed by the Exchange Act Individual Defendants.

67.     The statements referenced in ¶¶ 63-66 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Root would foreseeably fail to generate positive cash flow for at least several

- 15 -

years following the IPO; (ii) accordingly, the Company would foreseeably require significant cash infusions to meet its cash flow needs; (iii) notwithstanding the Defendants' touting of Root's purportedly unique, data-driven advantages, several of the Company's established industry peers in fact possessed significant competitive advantages over Root with respect to, *inter alia*, telematics data and data engagement; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### **The Truth Fully Emerges**

68. On March 9, 2021, multiple investor news resources reported that BofA Securities analyst Shanker had initiated coverage of Root with an "Underperform" rating on the premise that the Company is unlikely to be cash flow positive until 2027, and that already established market players would continue to impede the Company's profitability with superior telematics data and their dominant market positions. For example, a *Seeking Alpha* article reported, in relevant part:

- Root . . . stock drops 2.5% after BofA Securities analyst Joshua Shanker initiates coverage with an Underperform rating on the premise that the insure-tech won't be cash flow positive until 2027.

- As a result, he expects ROOT "will require not insignificant cash infusions from the capital markets to bridge its cash flow needs."

- Root prices its auto insurance based on a telematics score, meant to assess a driver's skill generally through hard braking frequency and how often they look at a cell phone while driving.

- Progressive, which has been using telematics for 20 years, "has a a [*sic*] sizable advantage over Root in terms of amount of data as well as engagement with the data," Shanker said in his note. Allstate also has a similar advantage.

- Furthermore, Progressive and Berkshire Hathaway's Geico hold dominant positions in direct-to-consumer engagement and brand identity, the analyst said.

- Sets price target of $9, far below the $21.92 average price target of Sell-Side analysts.

- Root shares' total return have significantly lagged the S&P 500 and competitors PGR and ALL since its IPO in October.

69.     On this news, Root's stock price fell $0.18 per share, or 1.46%, to close at $12.17 per share on March 9, 2021, representing a total decline of 54.93% from the Offering price.

70.     At the time this Complaint was filed, Root's stock price has continued to trade below the $27.00 per share Offering price, damaging investors.

71.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Root securities during the Class Period, and/ or Root Class A common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO; and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

73.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Root securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Root or its transfer agent and may be notified of the

- 17 -

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

74.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

75.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

76.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Root;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Root to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Root securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

77.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

78.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Root securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Root securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

79.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

80.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)

81.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

82.     This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

83.     During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Root securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Root securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

84.     Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents

- 20 -

described above, including statements made to securities analysts and the media that were designed to influence the market for Root securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Root's finances and business prospects.

85. By virtue of their positions at Root, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants. Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth. In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

86. Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control. As the senior managers and/or directors of Root, the Exchange Act Individual Defendants had knowledge of the details of Root's internal affairs.

87. The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Root. As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with

respect to Root's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Root securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Root's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Root securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

88. During the Class Period, Root securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Root securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Root securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Root securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

89. By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

90.     As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)**

91.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

92.     During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Root, and conducted and participated, directly and indirectly, in the conduct of Root's business affairs.  Because of their senior positions, they knew the adverse non-public information about Root's misstatement of income and expenses and false financial statements.

93.     As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Root's financial condition and results of operations, and to correct promptly any public statements issued by Root which had become materially false or misleading.

94.     Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Root disseminated in the marketplace during the Class Period concerning Root's results of operations.  Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Root to engage in the wrongful

acts complained of herein. The Exchange Act Individual Defendants, therefore, were "controlling persons" of Root within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Root securities.

95.     Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Root. By reason of their senior management positions and/or being directors of Root, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Root to engage in the unlawful acts and conduct complained of herein. Each of the Exchange Act Individual Defendants exercised control over the general operations of Root and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

96.     By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Root.

## COUNT III

**(Violations of Section 11 of the Securities Act Against the Securities Act Defendants)**

97.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

98.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

99.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

100.    Root is the registrant for the IPO. Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

101.    As issuer of the shares, Root is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

102.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

103.    By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

104.    Plaintiff acquired Root shares pursuant and/or traceable to the Offering Documents for the IPO.

105.    Plaintiff and the Class have sustained damages. The value of Root Class A common stock has declined substantially subsequent to and because of Defendants' violations.

## COUNT IV

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

106.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

107.    This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

108.    The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Root within the meaning of Section 15 of the Securities Act. The Securities Act Individual Defendants had the power and influence and exercised the same to cause Root to engage in the acts described herein.

109. The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

110. By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**ROBERT J. WAGONER CO., L.L.C.**

/s/ *Robert J. Wagoner*
Robert J. Wagoner (0068991)
107 W. Johnstown Road
Gahanna, Ohio 43230
Telephone: (614) 796-4110
Facsimile: (614) 796-4111
bob@wagonerlawoffice.com

and

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
James M. LoPiano
(*pro hac vice* application forthcoming)
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

and

**POMERANTZ LLP**
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

and

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

## **DEMAND FOR TRIAL BY JURY**

Please take notice that Plaintiff demands trial by jury in this action.

/s/ *Robert J. Wagoner*
Robert J. Wagoner (0068991)

# EXHIBIT 1

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, _ilia Kolominsky_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 (the "Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 (the "Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Root, Inc. ("Root" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Root securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired: (a) Root securities during the Class Period, as specified in the Complaint; and/or (b) Root Class A common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, as specified in the Complaint; including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    The attached sheet lists all of my transactions in: (a) Root securities during the Class Period, as specified in the Complaint; and/or (b) Root Class A common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

Executed _____3/18/2021 | 3:37 AM EDT_____

**(Date)**

DocuSigned by:

*ilia kolominsky*

76783ED89F08409...

**(Signature)**

ilia Kolominsky
_____

**(Type or Print Name)**

# EXHIBIT 2

**Root, Inc. (ROOT)**                                                  **Kolominsky, Ilia**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 1/20/2021 | 280 | $17.9000 |
| Purchase | 2/1/2021 | 300 | $20.2000 |
| Purchase | 2/1/2021 | 1 | $20.1900 |
| Purchase | 2/1/2021 | 90 | $20.1700 |