## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| ILIA KOLOMINSKY, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:21-cv-01197-EAS-CMV |
| Plaintiff, | JUDGE EDMUND A. SARGUS, JR. |
| v. | Magistrate Judge Chelsey M. Vascura |
| ROOT, INC., ALEXANDER TIMM, DANIEL ROSENTHAL, MEGAN BINKLEY, CHRISTOPHER OLSEN, DOUG ULMAN, ELLIOT GEIDT, JERRI DEVARD, LARRY HILSHEIMER, LUIS VON AHN, NANCY KRAMER, NICK SHALEK, SCOTT MAW, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC. and WELLS FARGO SECURITIES, LLC, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

**TABLE OF CONTENTS**

Page

SUMMARY OF PRINCIPAL ARGUMENTS PURSUANT TO L.R. 7.2 .......................... viii

ARGUMENT .................................................................................................................1

I.     THE COMPLAINT IS SUBJECT TO A HEIGHTENED PLEADING STANDARD ...............................................................................................1

II.    PLAINTIFF'S SECTION 11 CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO ALLEGE ANY ACTIONABLE MISSTATEMENT OR OMISSION IN THE REGISTRATION STATEMENT .......................................2

     A.     The Registration Statement's Accurate Disclosure of Root's Average CAC Between August 2018 and August 2020 Did Not Create a Duty To Disclose Root's CAC for September 2020....................................................................2

     B.     The Registration Statement Sufficiently Disclosed Information Regarding Root's National Marketing Campaign ....................................................................6

     C.     The Registration Statement's Disclosure About Root's Future CAC Goals Are Unactionable Under the Bespeaks Caution Doctrine, as Statements of Opinion and as Puffery. ...................................................................................11

         1.     The challenged statement is protected under the bespeaks caution doctrine. ...................................................................................12

         2.     The challenged statement is an unactionable statement of opinion...........13

         3.     The challenged statements are unactionable statements of puffery...........15

     D.     The Registration Statement Did Not Mislead Investors About Root's CAC Advantage. ...................................................................................16

     E.     The Registration Statement Complied with SEC Disclosure Requirements. ........17

III.    PLAINTIFF'S SECTION 12 CLAIM SHOULD BE DISMISSED ..........................18

IV.    PLAINTIFF'S SECTION 10(b) CLAIM FAILS AS A MATTER OF LAW ............20

     A.     Plaintiff Fails To Respond to Defendants' Showing that Plaintiff Did Not Allege Any Actionable Material Misstatement or Omission................................20

     B.     Plaintiff Fails To Allege Scienter. .......................................................................21

         1.     Plaintiff's argument that Defendants understood but disregarded "the most current factual information" about Root's CAC is contradictory and inaccurate. ...................................................................................23

         2.     Plaintiff's argument regarding the timing of Defendants' admissions does not support a strong inference of scienter.........................................25

         3.     Plaintiff has failed to show that Defendants had a self-interested motivation in securing a lucrative IPO. ...................................................27

        4.     Mr. Timm did not make false statements that would demonstrate scienter. ..................................................................................28

   C.    Plaintiff's New Scheme Liability Theory Fails, Too. ............................................29

        1.     Plaintiff did not plead scheme liability in the Complaint. ........................29

        2.     Defendants nonetheless refuted the allegations that Plaintiff now claims give rise to scheme liability. .............................................................32

**V.    PLAINTIFF'S CONTROL PERSON CLAIMS UNDER SECTION 15 OF THE SECURITIES ACT AND SECTION 20 OF THE EXCHANGE ACT SHOULD BE DISMISSED** ....................................................................................................32

**CONCLUSION** ................................................................................................................33

**APPENDIX A** .................................................................................................................35

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert Fadem Tr. v. Am. Elec. Power Co., Inc.*, 334 F. Supp. 2d 985
(S.D. Ohio 2004)........................................................................................10, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................14

*Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598 (6th Cir. 2005) ....................29

*Campbell v. Lexmark Int'l Inc.*, 234 F. Supp. 2d 680 (E.D. Ky. 2002)........................22

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)........................31

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) ...................................................27

*City Nat'l Bank v. Vanderboom,* 422 F.2d 221 (8th Cir. 1970)........................................5

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005) .................26

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Tech. Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020)......................................................................13

*Doshi v. Gen. Cable Corp.*, 823 F.3d 1032 (6th Cir. 2016)...............................22, 25, 26

*Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971 (6th Cir. 2018) ........................21, 26, 27

*Envision Healthcare Corp. Sec. Litig.*, 2019 WL 6168254
(M.D. Tenn. Nov. 19, 2019) ...............................................................................24

*Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011) .............................................14

*Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282 (S.D.N.Y. 2018) ...............11

*Garber v. Legg Mason, Inc.*, 347 F. App'x 665 (2d Cir. 2009)........................................5

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2011 WL 1335803
(M.D. Tenn. Mar. 31, 2011)...................................................................................24

*Greenberg v. Compuware Corp.*, 889 F. Supp. 1012 (E.D. Mich. 1995)........................4

*Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) (en banc) ......................21, 22, 25

*I.B.E.W. v. Limited Brands, Inc.*, 788 F. Supp. 2d 609 (S.D. Ohio 2011) ....................19

*IBEW Loc. Union No. 58 Pension Tr. Fund v. Royal Bank of Scot. Grp.*,
783 F.3d 383 (2d Cir. 2015).....................................................................................3

*In re Anheuser-Busch InBev SA/NV Sec. Litig.*, 2020 WL 5819558
(S.D.N.Y. Sept. 29, 2020) ..............................................................................15, 20

*In re Apple Comput. Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989)......................................6

*In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004) ..........................7

*In re Corrpro Sec. Litig.*, 2003 WL 23138459 (N.D. Ohio May 27, 2003) ....................27

*In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214 (D.N.J. 2002) ...........................19

*In re Downey Sec. Litig.*, 2009 WL 736802 (C.D. Cal. Mar. 18, 2009)........................22

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 487
(S.D.N.Y. 2013) ................................................................................................11

*In re Firstenergy Corp. Sec. Litig.*, 2022 WL 681320 (S.D. Ohio Mar. 7, 2022) ..................30, 32

*In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873
(N.D. Ohio 2006) ..........................................................................................23, 26

*In re Grand Casinos, Inc. Sec. Litigation*, 988 F. Supp. 1273 (D. Minn. 1997) ..........................26

*In re Humana, Inc. Sec. Litig.*, 2009 WL 1767193 (W.D. Ky. June 23, 2009) ...........................13

*In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455 (6th Cir. 2014)......................................27

*In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211 (D. Mass. 1999)....................25

*In re Proshares Tr. II Sec. Litig.*, 2020 WL 71007 (S.D.N.Y. Jan. 3, 2020)..................................8

*In re ProShares Tr. Sec. Litig.*, 728 F.3d 96 (2d Cir. 2013) ...........................................8

*Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*, 2021 WL 1316705
(M.D. Tenn. Apr. 8, 2021)...................................................................................31

*Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*, 510 F. Supp. 3d 583 (M.D. Tenn. 2020) ....................31

*La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, 2021 WL 4397946
(S.D. Ohio Sept. 27, 2021).................................................................... *passim*

*Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111 (E.D.N.Y. 2020) ...........................20, 24

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).......................................30

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329
(S.D.N.Y. 2012)...........................................................................................10, 17

*Loc. 295/Loc. 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689 (S.D. Ohio 2010) .......................................1

*McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992 (10th Cir. 2002) ................................7

*Miller v. Thane Int'l Inc.*, 519 F.3d 879 (9th Cir. 2008) ...................................5

*Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023 (8th Cir. 2011) ......................................29

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) ...........................................14, 15

*Phillips v. Triad Guar. Inc.*, 2012 WL 259951 (M.D.N.C. Jan. 27, 2012) ....................................20

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101 (W.D. Mich. 1996) ..........................................3

*Pittman v. Unum Grp.*, 861 F. App'x 51 (6th Cir. 2021) ...............................24

*Plymouth Cnty. Ret. Ass'n v. ViewRay, Inc.*, 556 F. Supp. 3d 772 (N.D. Ohio 2021) .................13

*PR Diamonds, Inc. v. Chandler*, 91 F. App'x 418 (6th Cir. 2004) ...........................................24, 27

*Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972 (8th Cir. 2012) ...................................29

*Sailors v. N. States Power Co.*, 4 F.3d 610 (8th Cir. 1993) .........................................5

*Sanchez v. Centene Corp.*, 407 F. Supp. 3d 831 (E.D. Mo. 2019) .................................28

*SEC v. Mozilo*, 2010 WL 3656068 (C.D. Cal. Sept. 16, 2010) .......................................6

*Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204 (2d Cir. 2020) ...........................................28

*Shenk v. Mallinckrodt plc*, 2019 WL 3491485 (D.D.C. July 30, 2019) ...........................................3

*Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037 (6th Cir. 1991) ..................................12

*Singh v. Schikan*, 106 F. Supp. 3d 439 (S.D.N.Y. 2015) ..............................................10

*South Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248 (W.D. Wash. 2009) ...............................25

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2021 WL 195370 (M.D. Tenn. Jan. 20, 2021) ..........................................31

*Stein v. U.S. Xpres Enters., Inc.*, 2020 WL 3584800 (E.D. Tenn. June 30, 2020) .........................1

*Stratte-McClure v. Morgan Stanley*, 784 F. Supp. 2d 373 (S.D.N.Y. 2011) ...................................7

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 2022 WL 989240
(W.D. Tenn. Mar. 31, 2022) .................................................................................31

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).................................................21

*Thomas v. Citigroup Glob. Mkts. Holdings Inc.*, 2022 WL 1051158
(S.D.N.Y. Mar. 1, 2022) ....................................................................................10

*Walker v. L Brands, Inc.*, 2020 WL 6118467 (S.D. Ohio Oct. 16, 2020)........................................3

*Wilkof v. Caraco Pharm. Lab'ys, Ltd.*, 2010 WL 4184465
(E.D. Mich. Oct. 21, 2010) ................................................................................4

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998).........................................................31

*WWP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039
(9th Cir. 2011)..........................................................................................29, 30, 32

*Y-GAR Capital LLC v. Credit Suisse Grp. AG*, 2020 WL 71163
(S.D.N.Y. Jan. 2, 2020)......................................................................................9

*Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564 (6th Cir. 2008) ......................................19

## SUMMARY OF PRINCIPAL ARGUMENTS PURSUANT TO L.R. 7.2

Plaintiff's Opposition Brief confirms that the Amended Complaint ("AC" or "Complaint") should be dismissed in its entirety as a matter of law:

*First*, Plaintiff's Section 11 claim is based on hindsight allegations that, months *after* its October 2020 IPO, Root's customer acquisition costs ("CAC") increased.  However, as Defendants showed in their Opening Brief, Plaintiff has failed to identify any actionable misstatement or omission in the Registration Statement in effect *at the time* of the IPO, which Plaintiff must do to plead a Section 11 claim.  *See infra* pp. 2-11; *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329, 345 (S.D.N.Y. 2012).  The Registration Statement accurately disclosed Root's CAC for a discrete two-year period: August 2018 to August 2020.  Because those disclosures were true and not misleading, Defendants had no duty to update Root's CAC for any other time period, including September 2020, when Plaintiff alleges that there was a one-month increase in CAC.  *See infra* pp. 2-6.  There is no duty to update unless, without the update, ***the facts actually disclosed*** would be rendered misleading, which, again, is not the case here.  *See IBEW Loc. Union No. 58 Pension Tr. Fund v. Royal Bank of Scot. Grp.*, 783 F.3d 383, 390 (2d Cir. 2015).

The Registration Statement's single disclosure regarding Root's long-term CAC beliefs also created no duty to disclose Root's September 2020 CAC.  *See infra* pp. 10-14.  The Registration Statement disclosed Root's ***belief*** that it could achieve a CAC advantage ***over the long run***.  RS at 2, 106, 120.  Root's September CAC data did not render that statement misleading—there is nothing inconsistent about Root experiencing a one-month CAC increase and believing that Root will have a CAC advantage over the long run.  *See infra* p. 5; *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002).  This is especially true because Root simultaneously warned investors of myriad risks that could cause CAC to rise over

viii

the long run.  *See infra* pp. 7-8; *In re Proshares Tr. II Sec. Litig.*, 2020 WL 71007, at *7

(S.D.N.Y. Jan. 3, 2020).  The Registration Statement also disclosed Root's national marketing

campaign, which necessarily increased Root's CAC in the near term (and which Plaintiff alleges

to be the cause of the September CAC increase).  *See infra* pp. 6-10.  Plaintiff has failed to

identify anything misleading or untrue about any of Root's CAC disclosures, which means Root

had no duty to disclose anything more.

   In any event, Root ***did disclose*** its September CAC prior to the IPO, as part of the

roadshow materials, which Plaintiff has incorporated into the Complaint and that Plaintiff relies

on to assert a claim under Section 12(a)(2).  *See infra* pp. 5-6.  And, contrary to Plaintiff's

assertions, Plaintiff cannot rely on a purported omission of a fact that was in fact disclosed.  *See,*

*e.g.*, *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 668-69 (2d Cir. 2009).  Plaintiff cites no

case to the contrary.

   *Second*, Plaintiff's Section 12 claim should be dismissed because Plaintiff again

fails to identify an actionable misstatement or omission.  *See infra* pp. 18-20.  In defending this

claim, Plaintiff's Opposition Brief resorts to misquoting the statements at issue to create the

impression of falsity.  When considered as they actually were made, the statements truthfully

communicated Root's recent spike in CAC due to its national marketing campaign.  Other

statements—regarding long-term CAC predictions—are textbook examples of unactionable

opinion and puffery.  *See, e.g.*, *In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214, 232

(D.N.J. 2002); *In re Anheuser-Busch InBev SA/NV Sec. Litig.*, 2020 WL 5819558, at *6

(S.D.N.Y. Sept. 29, 2020).

   *Third*, Plaintiff's Section 10(b) claims should be dismissed because Plaintiff fails

to identify any actionable misstatement or omission, and because Plaintiff fails adequately to

allege scienter.  *See infra* pp. 20-32.  Unable to salvage the claims it actually pled, *see infra* pp. 20-28, Plaintiff in its Opposition attempts to conjure a "scheme" theory of liability from its misstatement and omission allegations.  That fails both because (i) Plaintiff did not sufficiently plead a scheme theory of liability and (ii) the only purported "scheme" identified is the purported misstatements and omissions, which Defendants have shown to be insufficient to state a claim as a matter of law.  *See infra* pp. 28-32; *WWP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011), *abrogated on other grounds by Lorenzo v. SEC*, 139 S. Ct. 1094 (2019); *In re Firstenergy Corp. Sec. Litig.*, 2022 WL 681320, at *13 (S.D. Ohio Mar. 7, 2022).

## ARGUMENT

## I.    THE COMPLAINT IS SUBJECT TO A HEIGHTENED PLEADING STANDARD

As explained in the Opening Brief, the heightened pleading standard of Rule 9(b) applies to all of Plaintiff's claims, including its Section 11 and 12 claims.  In arguing for a more lenient pleading standard, Plaintiff relies on boilerplate language in the Complaint disclaiming allegations of fraud for the Section 11 and Section 12 claims.  (Opposition Br., ECF No. 58 at PageID 1208-09.)  Rather, controlling case law, which Plaintiff does not contest, makes clear that blanket disavowals of fraud do not relieve a plaintiff of Rule 9(b)'s heightened pleading standard if the claim sounds in fraud.  (Opening Br., ECF No. 57 at PageID 913-14 (citing *Loc. 295/Loc. 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689, 709 (S.D. Ohio 2010); *Stein v. U.S. Xpres Enters., Inc.*, 2020 WL 3584800, at *7-8 (E.D. Tenn. June 30, 2020)).)  As Defendants explained, and as Plaintiff fails to address, Plaintiff's Exchange Act claim is predicated on the same conduct as Plaintiff's Securities Act claims.  (Opening Br., ECF No. 57 at PageID 913-14.)  Accordingly, Rule 9(b)'s heightened pleading standard applies to all of Plaintiff's claims.[1]  In any case, the Complaint fails to state a claim under any standard of review.

---

[1] Plaintiff incorrectly states that "[n]owhere in Defendants' motion do they even attempt to explain how the Complaint does not meet [the Rule 9(b)] standards".  (Opposition Br., ECF No. 58 at PageID 1209.)  To the contrary, Defendants on numerous occasions explained that the Complaint failed to "explain[] why the [challenged] statements were misleading".  (*Id.*; *see, e.g.*, Opening Br., ECF No. 57 at PageID 922 ("Thus, Plaintiff has not alleged any facts suggesting that Root's customer acquisition costs remained elevated above the national average, and certainly has not alleged any such facts with the particularity required by Rule 9(b), which is fatal to its misrepresentation claim."); *id.* (explaining that Plaintiff has failed to allege any facts to suggest that any long-term increase in CAC had materialized as of the IPO).)

## II. PLAINTIFF'S SECTION 11 CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO ALLEGE ANY ACTIONABLE MISSTATEMENT OR OMISSION IN THE REGISTRATION STATEMENT

Defendants' Opening Brief demonstrated that Plaintiff failed to allege a single actionable misstatement or omission in Root's Registration Statement across the three categories at issue:  (i) Root's past CAC; (ii) Root's near-term national marketing campaign and the associated marketing expenditures; and (iii) Root's long-term CAC.[2]  Plaintiff's Opposition Brief fails to show otherwise.

As an initial matter, Plaintiff mischaracterizes Defendants' Opening Brief, suggesting that Defendants merely challenge the materiality of the purported misstatements. (*See, e.g.*, Opposition Br., ECF No. 58 at PageID 1210.)  Not so.  Rather, as shown in the Opening Brief, and as further explained below, the Complaint should be dismissed because Plaintiff has not met its burden of identifying any sort of misstatement or omission, material or otherwise.[3]  The Court need not even reach materiality because there is no misstatement or omission in the first place.

### A. The Registration Statement's Accurate Disclosure of Root's Average CAC Between August 2018 and August 2020 Did Not Create a Duty To Disclose Root's CAC for September 2020

Defendants' accurate disclosure of Root's average CAC from August 2018 to August 2020 does not, as a matter of law, create a duty to disclose Root's CAC for

---

[2] For the Court's convenience, attached hereto as "Appendix A" is a chart that identifies all of Plaintiff's challenged statements in the Complaint and corresponding alleged omissions, with brief explanations and citations to Defendants' briefing as to why those purported misstatements/omissions are not actionable.

[3] For this reason, Plaintiff's reliance on *Louisiana Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, 2021 WL 4397946, at *4 (S.D. Ohio Sept. 27, 2021) ("*LSPRF*"), in order to establish *materiality*—rather than a misstatement or omission—is inapposite.  (Opposition Br., ECF No. 58 at PageID 1210.)

2

September 2020.  (Opening Br., ECF No. 57 at PageID 915-19.)  There is no duty to update

unless Root's disclosure of its historical CAC "impl[ied] anything about future circumstances",

which it did not.  *IBEW Loc. Union No. 58*, 783 F.3d at 390.

Here, Root's September 2020 CAC can have no bearing on the accuracy of Root's

average CAC from August 2018 to August 2020, nor can Root's average CAC from August

2018 to August 2020 say anything about Root's September 2020 CAC.  As explained, those

simple points are indisputable (and undisputed) and are dispositive of Plaintiff's Section 11

claims.  Plaintiff resorts to a series of straw-man arguments attempting to distract this Court from

the fundamental pleading defects in the AC.

*First*, Defendants do not, as Plaintiff might wish (Opposition Br., ECF No. 58 at

PageID 1215), read the Complaint to allege that Root's $332 average CAC from August 2018 to

August 2020 was false.  (AC, ECF No. 31 at PageID 725-26, ¶ 7.)  Rather, as the Opening Brief

made clear, Plaintiff's concession that the historical disclosure was true and limited to a defined

time period means that Root had no duty to disclose additional data from a different time period.

The case law on this point is clear and unrebutted; Plaintiff cites no case to the contrary.

(Opening Br., ECF No. 57 at PageID 916 (citing *Picard Chem. Inc. Profit Sharing Plan v.

Perrigo Co.*, 940 F. Supp. 1101, 1117 (W.D. Mich. 1996); *IBEW Loc.*, 783 F.3d at 390));

*see also Walker v. L Brands, Inc.*, 2020 WL 6118467, at *17 (S.D. Ohio Oct. 16, 2020) ("[A]

corporation is not required to disclose a fact merely because a reasonable investor would very

much like to know that fact." (alteration in original) (quoting *In re Time Warner Sec. Litig.*,

9 F.3d 259, 267 (2d Cir. 1993))); *Shenk v. Mallinckrodt plc*, 2019 WL 3491485, at *7 (D.D.C.

July 30, 2019) ("To establish a material omission, a plaintiff must establish a duty to disclose the

relevant material fact.  In other words, absent a duty to disclose, a company is not required to

disclose even 'information that a reasonable investor might consider material.'" (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 (2011))).[4]

Any potential inference that Root's CAC from August 2018 to August 2020 implied anything about Root's future CAC is negated by the Registration Statement's repeated and explicit warnings that Root's "historical results are not necessarily indicative of the results that may be expected in the future". (RS at 19, 74, 76.)[5] Plaintiff does not address that disclaimer, aside from a conclusory assertion that it is "irrelevant" (Opposition Br., ECF No. 58 at PageID 1216), which is contrary to case law and common sense. *See Greenberg v. Compuware Corp.*, 889 F. Supp. 1012, 1017 (E.D. Mich. 1995) ("The statements of past operating results are by their terms confined to discrete periods of time which have since elapsed, and hence are not in any manner deceitful.").

*Second*, Plaintiff seems to assert that by not disclosing Root's September 2020 CAC in the Registration Statement, combined with accurately disclosing Root's August 2018 to August 2020 CAC, Defendants somehow rendered the following statement misleading: "Over time we believe the ongoing data we accumulate through growth will fuel a pricing advantage for target customers, driving improved conversion and a cost of acquisition advantage in all channels." (RS at 2, 106; Opposition Br., ECF No. 58 at PageID 1216.) That makes no sense.

---

[4] As the cases Plaintiff relies upon make clear (Opposition Br., ECF No. 58 at PageID 1215-16), companies may have to disclose additional material facts only "to the extent that the *volunteered disclosure* was misleading". *LSPRF*, 2021 WL 4397946, at *13 (citing *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 670 (6th Cir. 2005)); *Wilkof v. Caraco Pharm. Lab'ys, Ltd.*, 2010 WL 4184465, at *4 (E.D. Mich. Oct. 21, 2010) (same). Here, Root's August 2018 to August 2020 average CAC could not have been misleading because it was undisputedly true and said nothing about Root's CAC in September 2020 or beyond.

[5] *See also* RS at 27 ("As we grow, we may struggle to maintain cost-effective marketing strategies, and our **customer acquisition costs could rise substantially**." (emphasis added)); *id.* at 120 (Root's CAC "can vary . . . due to seasonality.").

There is nothing misleading about Root (i) accurately disclosing its historical CAC and (ii) stating Root's belief that it would have a CAC advantage over its competitors over the **long term** while (iii) experiencing increased CAC for a single month. Certainly, a company can experience short-term month-to-month CAC changes that exceed some of its historical averages while still maintaining a belief that, over the long term, it will obtain a CAC advantage over its competitors. This is especially true where, as here, Root disclosed that it was investing heavily, in the near-term, in a national marketing campaign to drive long-term value. (*See* RS at 9, 19, 83 (disclosing near-term costs associated with national marketing campaign); *id.* at 85 ("We expect that, in the long-term, our sales and marketing will decrease as a percentage of revenue as the proportion of renewals to our total business increases.").)

      *Third*, Plaintiff asks the Court to disregard that Root in fact disclosed its increased September 2020 CAC in its roadshow materials prior to the IPO (Opposition Br., ECF No. 58 at PageID 1217-18), despite Plaintiff including statements from those very roadshow materials in the Complaint (AC, ECF No. 31 at PageID 750, ¶ 124). Plaintiff's request finds no support in the caselaw. Plaintiff has the burden of alleging specific misstatements or omissions, which it simply cannot do when the purportedly misstated or omitted information exists in the public domain. *See Garber*, 347 F. App'x at 668-69; *Sailors v. N. States Power Co.*, 4 F.3d 610, 613 (8th Cir. 1993) ("The securities laws require disclosure of information *that is not otherwise* in the public domain."); *City Nat'l Bank v. Vanderboom,* 422 F.2d 221, 231 (8th Cir. 1970) (a company has no duty to disclose if investors have "ready access to the information involved").[6]

---

[6] The purportedly contrary cases upon which Plaintiff relies are inapposite. (Opposition Br., ECF No. 58 at PageID 1218.) In those cases, the public information at issue was not readily accessible and it was unreasonable to presume that investors would access the information. *See Miller v. Thane Int'l Inc.*, 519 F.3d 879, 887 (9th Cir. 2008) (declining to presume that investors independently seek out the unofficial drafting history of a prospectus in addition to the final

For these reasons, the challenged statements regarding Root's past CAC advantage are unactionable as a matter of law.[7]

## B.   The Registration Statement Sufficiently Disclosed Information Regarding Root's National Marketing Campaign

There is no dispute that the Registration Statement disclosed that Root "intend[ed] to increase [its] presence in digital and traditional channel media and launch a national advertising campaign to build [its] brand awareness". (RS at 83.) It also disclosed that, "[i]n the near term, as we expand our licensed footprint to 50 states, we will invest in our national brand". (*Id.* at 120.) Those expenditures and investments necessarily increase CAC in the near term. (Opening Br., ECF No. 57 at PageID 919-21.) It is simple math that Root's increased marketing

---

prospectus). Here, by contrast, the roadshow statements were directly tied to, and covered in connection with, Root's IPO, and it is eminently reasonable to assume that investors would be aware of them. As Plaintiff itself explains, the "purpose" of a roadshow is to enable underwriters and top executives of an issuer "to make a pitch to investors to invest in the offering". (AC, ECF No. 31 at PageID 754, ¶ 92 n.2.) Indeed, as *SEC v. Mozilo*, cited by Plaintiff, expressly explains, "[t]he question [for materiality] is not whether the information is reflected in the company's stock price, but ***whether the information is so readily available*** that a reasonable investor would consider it as ***part of the total mix of information***". 2010 WL 3656068, at *9 (C.D. Cal. Sept. 16, 2010). The roadshow statements were certainly readily available to investors prior to Root's IPO. In any case, the Complaint itself assumes that investors in Root stock knew all public information related to Root. (AC, ECF No. 31 at PageID 770, ¶ 211 (alleging that Root common stock traded in an efficient market).) The final case Plaintiff relies upon is wholly inapplicable because it concerns distinct legal circumstances. *See In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 114 (9th Cir. 1989) (addressing a situation where a fraud complaint alleged actual reliance on a particular statement rather than relying on the fraud-on-the-market presumption for reliance).

[7] The same reasoning applies to the two other statements in the AC that concern Root's historical CAC advantage. (*See* AC, ECF No. 31 at PageID 744, ¶ 106; RS at 6, 113 ("Through our hyper-targeted, data-driven and ever-improving performance marketing capabilities, we <u>have been</u> able to acquire customers for below the average cost of doing so through each of the direct and agent-based channels."); AC, ECF No. 31 at PageID 744, ¶ 106; RS at 120 ("We therefore designed a mobile-directed customer acquisition strategy, delivering customer acquisition costs below the average cost of doing so through each of the direct and agent channels[.]")).

expense (numerator of CAC) would result in some increase of CAC until and unless new customers (denominator of CAC) are acquired as a result of the increased spend. Accordingly, the Registration Statement accurately disclosed to investors precisely the risks that Plaintiff alleges to have been omitted. Each of Plaintiff's arguments to the contrary fails as a matter of law for the following reasons:

*First*, Plaintiff asserts that Root's disclosure of a two-year average CAC figure (from August 2018 to August 2020) "necessarily" meant that, despite an ongoing national marketing campaign, Root would maintain its CAC advantage in the near term. (Opposition Br., ECF No. 58 at PageID 1219.) But one has nothing to do with the other. An ***average*** CAC during one time period comprising 24 months says nothing about what Root's CAC will be during a different time period comprising only the one month immediately prior to the IPO. Disclosing one does not give rise to an obligation to disclose the other. Instead, "[i]t is well-established that the accurate reporting of historic successes does not give rise to a duty to further disclose contingencies that might alter the revenue picture in the future." *McDonald*, 287 F.3d at 998.

Were there any doubt on that point (and there can be none), Root repeatedly warned investors that past results should not be taken to imply anything about future results. (RS at 19, 74, 76.) As a result, Plaintiff's Section 11 claim is defeated as a matter of law. *See Stratte-McClure v. Morgan Stanley*, 784 F. Supp. 2d 373, 385 (S.D.N.Y. 2011) ("[R]eports of current results do not constitute assurances about future results"), *aff'd*, 776 F.3d 94 (2d Cir. 2015), *and*, 598 F. App'x 25 (2d Cir. 2015); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 378 (S.D.N.Y. 2004) (rejecting argument that "reporting of revenue figures

implicitly represented that such results would continue"), *aff'd sub nom. Albert Fadem Tr. v. Citigroup Inc.*, 165 F. App'x 928 (2d Cir. 2006).

> *Second*, Plaintiff argues that, because Root maintained its CAC advantage even though its marketing costs in the first two quarters of 2020 were greater than its marketing costs in the first two quarters of 2019, "investors would have reasonably expected that CAC would be unaffected by any increased marketing costs incurred as part of the planned national expansion". (Opposition Br., ECF No. 58 at PageID 1219-20.)  This argument is a red herring.  Root expressly warned investors that past experience should not be taken as a guarantee of future results, and that future initiatives might not succeed, leading to an increase in CAC.  (*See, e.g.*, RS at 19, 74, 76 ("historical results are not necessarily indicative of the results that may be expected in the future"); *id.* at 27 ("As we grow, we may struggle to maintain cost-effective marketing strategies, and our customer acquisition costs could rise substantially."); *id.* at 83 (Root's "ability to attract new customers" depended on "the effectiveness of [Root's] marketing efforts").)  Those disclosures rebut Plaintiff's claim.  *See In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) ("[W]hen a registration statement warns of the exact risk that later materialized, a section 11 claim will not lie as a matter of law.").

> Moreover, by disclosing the national expansion, Root identified for investors **what Plaintiff alleges to be** the underlying cause of Root's CAC increase, thus identifying exactly what Plaintiff alleges to be the missing facts.  Inconvenient as it may be for Plaintiff, and far from concealing material facts from investors, Root in fact disclosed them.  *See In re Proshares Tr. II*, 2020 WL 71007, at *7 ("Registration Statement discloses the primary omission alleged by plaintiffs", which renders it unactionable).

*Third*, Plaintiff suggests that CAC might not necessarily increase as marketing spend increases.  (Opposition Br., ECF No. 58 at PageID 1220.)  That is both wrong and beside the point.  It is wrong because CAC necessarily increases upon the launch of a major, costly marketing initiative; which again is simple math fully understood by investors.  As one of the analyst reports Plaintiff relies on makes clear:  "new customers from the [increased] sales and marketing spend will *likely lag the spending*".[8]  (AC, ECF No. 31 at PageID 755-56, ¶ 139.)  It is beside the point because, again, Root disclosed the risk that CAC could remain elevated as a result of expensive marketing efforts.  (RS at 27 ("As we grow, we may struggle to maintain cost-effective marketing strategies, and our customer acquisition costs could rise substantially."); *id.* at 83 (Root's "ability to attract new customers" depends on "the effectiveness of [Root's] marketing efforts").)

Contrary to Plaintiff's insinuations, Root never guaranteed that CAC would remain low despite the new marketing efforts.  To the contrary, it repeatedly disclosed the risk that CAC might increase.  (*See id.* ("Our ability to attract new customers will depend on a number of factors, including . . . the effectiveness of our marketing efforts"); *see also id.* at 22 ("[W]e will incur additional expenses to support our growth"; "We may lose existing customers or fail to acquire new customers").)  This alone defeats Plaintiff's claims:  "There cannot be a material misstatement or omission if '[defendants'] statements explicitly disclosed the very . . . risks about which [plaintiff] claim[s] to have been misled.'"  *Y-GAR Capital LLC v. Credit Suisse Grp. AG*, 2020 WL 71163, at *4 (S.D.N.Y. Jan. 2, 2020) (alterations in original) (quoting

---

[8] Plaintiff tries to discount this knowledge among investors by pointing to the fact that this analyst report was published after the IPO.  (Opposition Br., ECF No. 58 at PageID 1220.)  But the timing of the report has no bearing on its common-sense observation that, as a general matter, new customers lag an increase in marketing spend.

*Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 135 (2d Cir. 2011)); *see also, e.g.*, *Thomas v. Citigroup Glob. Mkts. Holdings Inc.*, 2022 WL 1051158, at *14-15 (S.D.N.Y. Mar. 1, 2022) (rejecting a Section 11 claim based on alleged misleading statement about future expected prices because the document warned of risks related to price fluctuation).

      *Fourth*, Plaintiff attempts to argue that a long-term increase in CAC already had materialized by the time of the IPO and that Root should have disclosed that fact to investors. (Opposition Br., ECF No. 58 at PageID 1223.) But, tellingly, to make that argument Plaintiff points only to *post-IPO* disclosures about CAC levels *after the IPO*, which, of course, reveals nothing about Root's CAC immediately prior to the IPO. (*Id.* at PageID 1223-24.) Plaintiff pleads no fact to suggest (let alone to plausibly allege) that Root's two-year average CAC had increased prior to or at the time of the IPO. This is an attempt to plead falsity by hindsight, which courts repeatedly reject. *See, e.g.*, *Lighthouse Fin. Grp.*, 902 F. Supp. 2d at 345.

      *Fifth*, Plaintiff attempts to distinguish *Singh v. Schikan*, 106 F. Supp. 3d 439 (S.D.N.Y. 2015), by pointing out that the company in *Singh* could not have known its clinical trial would fail because executives lacked the requisite information to make that prediction. (Opposition Br., ECF No. 58 at PageID 1224.) But that is precisely the case here. Plaintiff identifies no facts in support of its assertion that Defendants should have known that Root's CAC would remain elevated in the long term. Because Root's "public statements [were] consistent with reasonably available data" at the time, Defendants did not need to "present an overly gloomy or cautious picture of current performance and future prospects". *Albert Fadem Tr. v. Am. Elec. Power Co., Inc.*, 334 F. Supp. 2d 985, 1026 (S.D. Ohio 2004) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d. Cir. 2000)). And, again, Root nevertheless did disclose that it

"may struggle to maintain cost-effective marketing strategies, and [its] customer acquisition costs could rise substantially".  (RS at 27.)

   For the above reasons, the Registration Statement's disclosures about Root's national marketing campaign were not misleading and Plaintiff continues to fail to identify an actionable misstatement or omission in the Complaint supporting its Section 11 claim, and must therefore be dismissed as a matter of law.

  **C.**  **The Registration Statement's Disclosure About Root's Future CAC Goals Are Unactionable Under the Bespeaks Caution Doctrine, as Statements of Opinion and as Puffery.**

   Plaintiff challenges as misleading only one statement concerning Root's future prospects:  "Over time we believe the ongoing data we accumulate through growth will fuel a pricing advantage for target customers, driving improved conversion and a cost of acquisition advantage in all channels."[9]  (AC, ECF No. 31 at PageID 744-45, ¶ 106; RS at 2, 106.)  That statement is not actionable as a matter of law, and Plaintiff's arguments to the contrary fail.

---

[9] Plaintiff challenges another forward-looking statement, but characterizes it as a misstatement about past events:  "As we grow, we may struggle to maintain cost-effective marketing strategies, and our customer acquisition costs could rise substantially."  (RS at 28.) Plaintiff contends that Defendants' statement ignores that "the hypothetical risk" described in that statement "had already materialized as of the IPO" (which it did not).  (Opposition Br., ECF No. 58 at PageID 1222; *see also id.* at PageID 1227 ("Plaintiff alleges that this risk disclosure falsely warned of hypothetical events that had already occurred.").)  As explained *infra* p. 13, Plaintiff misses the mark because this disclosure concerns Root's *future* CAC, and the risk of predictions about the future not coming true necessarily could not have materialized as of the IPO.  The authorities Plaintiff cites, thus, are inapplicable because they concern risks that had in fact materialized at the time the statement was made.  *See In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) (revenue cuts already materialized); *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 290-91 (S.D.N.Y. 2018) (harm of integration activities already materialized).

1.     <u>The challenged statement is protected under the bespeaks caution doctrine.</u>

The challenged statement—which addresses Root's beliefs regarding its future CAC—is unactionable because it is a forward-looking statement accompanied by meaningful cautionary language.  As explained in the Opening Brief, while the Registration Statement disclosed Root's belief that it could achieve a long-term CAC advantage, it simultaneously disclosed meaningful cautionary warnings about factors that could cause things to turn out differently.  (Opening Br., ECF No. 57 at PageID 926.)  That renders the statement unactionable. *See In re Humana, Inc. Sec. Litig.*, 2009 WL 1767193, at *12 (W.D. Ky. June 23, 2009).

In response, Plaintiff argues that the bespeaks caution doctrine does not protect past statements of material fact.  (Opposition Br., ECF No. 58 at PageID 1225-26.)  Even if true, it is irrelevant.  Defendants do not invoke the bespeaks caution doctrine to defend past statements.  The challenged statement at issue here—*i.e.*, "***over time*** we ***believe*** [data] ***will fuel*** a pricing advantage"—is an optimistic statement about the ***future*** and, thus, is a textbook example of a statement rendered unactionable by the bespeaks caution doctrine.  *See, e.g., Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039-40 (6th Cir. 1991) (statement that construction company was "counting on new products to offset a weaker construction market for 1989" was "only an optimistic prediction which 'bespoke caution'").

Plaintiff next suggests that the Registration Statement's risk disclosures regarding Root's future CAC were not meaningfully cautionary.  That is false.  Among other things, Root warned investors "not [to] rely on forward-looking statements as predictions of future events" and further stated that Root "may struggle to maintain cost-effective marketing strategies, and our customer acquisition costs could rise substantially".  (RS at 27, 65.)  The cases cited in the Opening Brief demonstrate that such cautionary language is sufficiently meaningful under the bespeaks caution doctrine; Plaintiff does not even bother to distinguish those cases and therefore

12

concedes this point.  (Opening Br., ECF No. 57 at PageID 926-27 (citing *In re Humana*, 2009 WL 1767193, at \*12; *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Tech. Corp.*, 450 F. Supp. 3d 379, 398-99 (S.D.N.Y. 2020))); *see also Plymouth Cnty. Ret. Ass'n v. ViewRay, Inc.*, 556 F. Supp. 3d 772, 790-91 (N.D. Ohio 2021) (under the bespeaks caution doctrine, statement that "revenue would be between \$111 million and \$124 million" could not support a securities violation because statement was "forward-looking" and accompanied by "meaningful cautionary language", *i.e.*, that "actual results could differ from those projected in any forward-looking statements due to numerous factors").

*Third*, Plaintiff argues that the disclosures about Root's *future* CAC goals are not protected by bespeaks caution because the protection does not apply to risks that have already transpired.  (Opposition Br., ECF No. 58 at PageID 1227.)  Plaintiff, again, misses the point. The bespeaks caution doctrine protects Root's statement that, over time, it believed it could achieve a CAC advantage in the future.  The risk of that prediction not coming true in the future necessarily could not have materialized as of or before the IPO.  For these same reasons, Plaintiff's reliance on post-IPO disclosures to demonstrate that a long-term risk had actually materialized as of the IPO is a red herring.  (*Id.* at PageID 1223.)

2.    The challenged statement is an unactionable statement of opinion.

As with Plaintiff's argument regarding the bespeaks caution doctrine, Plaintiff again mischaracterizes Defendants' argument regarding unactionable statements of opinion to be that *all* of Plaintiff's challenged statements are unactionable opinions.  (*Id.* at PageID 1228.)  In fact, Defendants identify as an unactionable opinion only the challenged statement regarding Root's *future*, hoped-for CAC advantage.  (Opening Br., ECF No. 57 at PageID 927.)  Plaintiff

has done nothing to rebut that showing.[10]

        *First*, Plaintiff alleges nothing to suggest that Defendants knew or believed, at the time of the IPO, that Root would not be able to achieve a CAC advantage in the long term. *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) (material misrepresentation "liability lies only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed").  Plaintiff merely alleges that Defendants knew that Root's CAC had significantly increased during a single month leading up to the IPO.  This increase, due to a short-term marketing campaign, of course did not mean that Defendants knew that Root's CAC would remain elevated in the long term, let alone that it would remain elevated to such an extent that it would erode any advantage that Root otherwise would have enjoyed.  Indeed, even *after* the IPO, analysts were expecting—based on the same CAC information that Root had—that Root's CAC would decline after 1Q2021.  (AC, ECF No. 31 at PageID 752-53, ¶¶ 131, 133.)  Plaintiff has alleged no fact supporting its baseless assertion that Defendants did not "actually hold[] the stated belief", let alone sufficient facts to make such an allegation "plausible".  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184-85 (2015); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to survive motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

---

[10] While merely appending the term "we believe" to a statement does not automatically render it an unactionable opinion (Opposition Br., ECF No. 58 at PageID 1228), in this case the use of "believe" only reinforces that the statement is an opinion about ***future*** events.  The primary reason it is an opinion and not a fact is that Root's future, long-term CAC is inherently unknowable.  And, indeed, the Registration Statement's risk disclosures specifically cautioned against assuming that Root would achieve a CAC advantage in the long term.

*Second*, Root's disclosure of its long-term CAC opinions did not contain a materially false "embedded statement[] of fact".  (Opposition Br., ECF No. 58 at PageID 1228); *Omnicare*, 575 U.S. at 185.  Rather, Root's **opinion** expressly was based on "ongoing data" it expected to "accumulate through growth" in the future.  (RS at 106.)  Those are not statements of present fact and they, expressly, depend on future events taking place, namely "data accumulation" and "growth".

*Third*, Defendants did not "lack[] the basis for making [the] statement" about Root's future CAC.  *Omnicare*, 575 U.S. at 196.  Instead, Root disclosed both why it believed a long-term CAC advantage was possible—data accumulation through growth—and risks that might cause those advantages not to materialize.  Plaintiff alleges nothing to support an inference that Root's belief lacked a valid basis or that the inherent risks were not disclosed.  "To the contrary, a reasonable investor would have taken Defendants' statements to mean that risks existed but the company was confident in its efforts to minimize its exposure."  *In re Anheuser-Busch*, 2020 WL 5819558, at \*6.

### 3.   The challenged statements are unactionable statements of puffery.

Defendants' Opening Brief explained that two of the statements challenged by the Complaint are unactionable puffery.  (Opening Br., ECF No. 57 at PageID 928-29.)  Plaintiff's Opposition Brief clarifies that Plaintiff is not challenging one of the two statements, leaving only the statement that, "over time", Root "believe[d]" that it would attain a "cost of acquisition advantage".  (Opposition Br., ECF No. 58 at PageID 1213.)  Plaintiff argues that this statement was not puffery because Root's CAC was highly material to investors.  (*Id.* at PageID 1223-24.)  But that a given topic may be material does not foreclose statements about it from being puffery.

Plaintiff cites no case in support of its argument.[11]  Defendants, on the other hand, cited

numerous cases holding almost identical statements to be puffery.  (*See* Opening Br., ECF

No. 57 at PageID 929 (collecting cases).)

*          *          *

Because it was not misleading, and protected by the bespeaks caution doctrine,

and as a statement of opinion and as puffery, the Registration Statement's disclosure about

Root's future CAC is unactionable.  Plaintiff's Section 11 claim, therefore, should be dismissed

in its entirety as a matter of law.

### D. The Registration Statement Did Not Mislead Investors About Root's CAC Advantage.

Plaintiff separately alleges that the Registration Statement failed to disclose that

Root lost its competitive advantage in CAC.  (Opposition Br., ECF No. 58 at PageID 1229-30.)

As explained in the Opening Brief, though, Plaintiff's allegations regarding Root's "competitive

advantage" are one and the same as Plaintiff's allegations related to CAC and, thus, fail for the

same reasons.  (Opening Br., ECF No. 57 at PageID 929-30.)  Plaintiff does not address this

argument and, thus, has conceded the point.

To the extent Plaintiff tries to allege a discrete misstatement based on Root's

"competitive advantage" disclosures, Plaintiff's allegations fail as a matter of law for additional

reasons.  (*Id.* at PageID 930-31.)  Plaintiff fails to allege any facts that suggest that Root, as of

---

[11] While Plaintiff cites to *LSPRF*, for the proposition that statements about topics of "central importance" to a company are not puffery (Opposition Br., ECF No. 58 at PageID 1213), that case is distinguishable because, there, the statements were made to reassure investors about the success of an acquisition and resulting integration while omitting key adverse factors that could have hindered the integration.  *See* 2021 WL 4397946, at *7.  Here, by contrast, the challenged statement is about Root's future performance and was accompanied by the disclosure of specific risk factors that could make the optimistic, rosy assertion about future costs not materialize.

16

the IPO, did not have a competitive advantage in CAC as compared to other channels and

companies.[12] (*Id.* at PageID 930.)  To make such an allegation plausible, Plaintiff would need to

plead facts not only about Root's CAC, but also about the CAC at the time of the IPO of the

other channels and companies with which Root competes, which Plaintiff has failed to do.

Plaintiff points to post-IPO disclosures in arguing that comparisons to other channels of

customer acquisition and other competitors in the industry are irrelevant.  (Opposition Br., ECF

No. 58 at PageID 1230.)  But those disclosures have no bearing on Root's competitive advantage

at the time of the IPO.  Plaintiff is once again attempting to plead falsity by hindsight.  *See*

*Lighthouse Fin. Grp.*, 902 F. Supp. 2d at 345.  Plaintiff attempts to salvage its deficient pleadings

by claiming that "the AC's allegations must be presumed as true and factual argument is

improper."  (Opposition Br., ECF No. 58 at PageID 1229.)  Plaintiff again misses the point.

Defendants are not disputing an alleged fact—Plaintiff has simply failed to plead a factual

predicate to its claim.

### E. The Registration Statement Complied with SEC Disclosure Requirements.

As explained in Defendant's Opening Brief, the Registration Statement complied

with each of the SEC disclosure requirements cited by Plaintiffs.  (Opening Br., ECF No. 57 at

PageID 922 n.4.)  While Plaintiff tries to present these requirements as independent bases

supporting its Section 11 claim, that is not so.  (Opposition Br., ECF No. 58 at PageID 1230-33.)

Defendant's arguments explaining why none of Plaintiff's challenged statements were materially

---

[12] As explained in the Opening Brief, to the extent Plaintiff alleges that the Registration Statement misled investors about Root's *future* competitive advantage (rather than any advantage as of the IPO), those allegations fail because Plaintiff did not allege that Root's future predictions were incorrect or that Root should have made a differing prediction, and also because such prospective assessments about competitive advantage are unactionable as forward-looking statements, statements of opinion, and statements of puffery.  (Opening Br., ECF No. 57 at PageID 931.)

misleading also demonstrate compliance with the SEC disclosure requirements, as explained in the Opening Brief. (Opening Br., ECF No. 57 at PageID 915 n.2, 920 n.4.)

The Registration Statement complied with Item 303 because the Registration Statement disclosed Root's marketing campaign, which, due to the associated marketing expense, was a "matter that would have an impact on future operations", *i.e.*, Root's CAC. (*Id.* at PageID 917, 919-20 n.4.) The Registration statement complied with Item 105 because, as the Opening Brief thoroughly explained, the Registration Statement disclosed specific risks associated with CAC, the potential increase in costs, and other "significant factors that make [the securities] speculative or risky". (*Id.*) And the Registration Statement complied with Rule 408 because no additional facts were required to be disclosed to make the challenged statements not misleading. (*Id.*)

## III.    PLAINTIFF'S SECTION 12 CLAIM SHOULD BE DISMISSED

As explained in the Opening Brief, the roadshow disclosures (which are at issue in Plaintiff's Section 12 claim) are unactionable because they did not contain any material misstatements or omissions, and they are protected as statements of opinion and statements of puffery. (Opening Br., ECF No. 57 at PageID 932.) Plaintiff's arguments to the contrary fail.

Plaintiff claims that Mr. Timm's description of the September CAC increase was an inaccurate statement of material fact. (Opposition Br., ECF No. 58 at PageID 1233.) Specifically, Plaintiff asserts that Mr. Timm described the CAC increase as being caused by "short term" marketing "experimentation", whereas, in reality, the spike was due to the national marketing campaign, which was "set to continue long-term". (*Id.*) But Plaintiff simply asserts that the marketing campaign was "set to continue ***long-term***"; it offers no facts, whatsoever, to support that assertion. Moreover, as the Complaint itself notes, Mr. Timm directly attributed the increase in costs to "experimentation on brand" in connection with "***becoming a national brand***"

18

(AC, ECF No. 31 at PageID 750, ¶ 124), thereby disclosing that the CAC increase would persist so long as Root was attempting to become a national brand through the national marketing campaign.

Plaintiff then resorts to selective quoting of Mr. Timm's roadshow statements to manufacture an appearance of falsity.  According to Plaintiff, "Timm's statement that 'we do have the ability to keep our customer acquisition costs much lower than our competitors' was an inaccurate statement of material fact", in part because "Root had no competitive advantage over traditional insurers in terms of CAC as of the IPO".  (Opposition Br., ECF No. 58 at PageID 1234.)  But that is not what Mr. Timm said.  Plaintiff omits here, and in every other instance in the Opposition Brief where this language is quoted, the critical first half of Mr. Timm's statement.  ***Mr. Timm did not say "we do have the ability . . . ."; rather, he said "we <u>believe</u> – and we've seen <u>long term</u> that we do have the ability to keep our customer acquisition costs much lower than our competitors."***  (AC, ECF No. 31 at PageID 741, ¶ 92.) Plaintiff's obvious misquotation is telling.

What Mr. Timm actually said is both unactionable puffery and an unactionable statement of opinion, as explained in the Opening Brief.  (Opening Br., ECF No. 57 at PageID 934); *see I.B.E.W. v. Limited Brands, Inc.*, 788 F. Supp. 2d 609, 632 (S.D. Ohio 2011) (statements such as those expressing positive outlook, progress and "very strong . . . demand" for the company's brand were puffery); *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 574 (6th Cir. 2008) (statement that the company's primary customer viewed their company as a "viable" service provider, despite violating the contract with that customer, is puffery); *see also, e.g.*, *In re Cybershop.com*, 189 F. Supp. 2d at 232 (statement that new business relationship "will . . . driv[e] [their] top line growth and increase[e] margins by lowering [their] customer

acquisition costs" was puffery); *In re Anheuser-Busch*, 2020 WL 5819558, at *6 (statements about expected dividend growth were unactionable statements of opinion because "the existence of financial challenges, particularly where Defendants had acknowledged these challenges and outlined efforts to mitigate them, [did] not render Defendants' optimistic opinion statements as actionable"); *Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 134 (E.D.N.Y. 2020) (statement "we expect continued improvement going forward" was not actionable because the plaintiffs did not plead that any executives did not have that expectation).

For each of those reasons, and the others cited in the Opening Brief, Plaintiff's Section 12 claim should be dismissed as a matter of law.

## IV.     PLAINTIFF'S SECTION 10(b) CLAIM FAILS AS A MATTER OF LAW

### A.     Plaintiff Fails To Respond to Defendants' Showing that Plaintiff Did Not Allege Any Actionable Material Misstatement or Omission.

As explained in Defendants' Opening Brief, Plaintiff relies on the same alleged misstatements and omissions for its Section 10(b) claim as for its Sections 11 and 12 claims. (Opening Br., ECF No. 57 at PageID 935.)  Thus, Plaintiff's Section 10(b) claim should be dismissed for the same reasons outlined in Defendants' Opening Brief and above as to Plaintiff's Sections 11 and 12 claims:  Plaintiff fails to allege an actionable misstatement or omission concerning customer acquisition costs and, thus, fails to plead the first element of a Section 10(b) claim.  *See, e.g.*, *Albert Fadem*, 334 F. Supp. 2d at 1019 (explaining that the test for materially misleading statements or omissions is the same under Section 10(b) as under Section 11).

Because Plaintiff has not alleged any actionable misstatement or omissions, the Court need not even reach scienter to dismiss the Complaint at the pleading stage; "[i]f there were no false statements, there can be no scienter".  *Phillips v. Triad Guar. Inc.*, 2012 WL 259951, at *5-6 (M.D.N.C. Jan. 27, 2012) (citing *Teachers' Ret. Sys. of La. v. Hunter*,

477 F.3d 162, 184 (4th Cir. 2007)). Nevertheless, Plaintiff's scienter arguments fail on their own merits as well.

### B. Plaintiff Fails To Allege Scienter.

As Defendants explained in their Opening Brief, Plaintiff's Section 10(b) and Rule 10b-5 claims fail because Plaintiff does not sufficiently plead scienter. (Opening Br., ECF No. 57 at PageID 935-38.) The test for determining the sufficiency of a plaintiff's scienter allegations is found in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). The Sixth Circuit operationalizes the *Tellabs* test by using the nine factors outlined in *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) (en banc):

> (1) insider trading at a suspicious time or in an unusual amount;
>
> (2) divergence between internal reports and external statements on the same subject;
>
> (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information;
>
> (4) evidence of bribery by a top company official;
>
> (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit;
>
> (6) disregard of the most current factual information before making statements;
>
> (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication;
>
> (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and
>
> (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Id.* at 552; *see Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 979 (6th Cir. 2018).

The Sixth Circuit analyzes "all the allegations [of scienter] holistically" to determine if they "giv[e] rise to a *strong* inference that the defendant acted with the required state of mind". *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016) (quoting 15 U.S.C. § 78u-4(b)(2)(A)). "'A strong inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.' . . . Pleadings that fail to meet this standard 'shall' be dismissed". *Id.* (quoting *Tellabs*, 551 U.S. at 314); *see also Helwig*, 251 F.3d at 553 (plaintiff must plead inferences that "leave little room for doubt as to misconduct"); *Campbell v. Lexmark Int'l Inc.*, 234 F. Supp. 2d 680, 688 (E.D. Ky. 2002) (dismissing a 10b-5 claim where plaintiff's allegations raised a "reasonable inference" of scienter, "but they do not raise a *strong* inference").

Here, Plaintiff has failed to raise any reasonable inference of scienter, much less a strong one. Notably, Plaintiff attempts to invoke only three of the *Helwig* factors, leaving six entirely unaddressed. Even with respect to the three factors that Plaintiff does address, Plaintiff has not adequately shown that they cut in Plaintiff's favor, as discussed below. Thus, Plaintiff's purported facts cannot support any inference of scienter, let alone a strong one. *See In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873, 900 (N.D. Ohio 2006) ("the *Helwig* factors are non-exhaustive . . . [but] the absence of these factors indicates the absence of scienter" (internal citation omitted)).[13]

---

[13] In reality, as explained in Defendants' Opening Brief, Plaintiff does not rely on ***facts*** at all. Rather, Plaintiff lists several conclusory assertions of the type forbidden by the heightened pleading standards of the PSLRA and Rule 9(b). *See In re Downey Sec. Litig.*, 2009 WL 736802, at *13 (C.D. Cal. Mar. 18, 2009) (rejecting "vague and conclusory" allegation of scienter "not supported by any facts"); *Campbell*, 234 F. Supp. 2d at 684 ("[B]road, sweeping language does not itself create a 'strong inference' of scienter. Such allegations are general and conclusory.").

1.    Plaintiff's argument that Defendants understood but disregarded "the most current factual information" about Root's CAC is contradictory and inaccurate.

Plaintiff's contention that Defendants disregarded the most current factual information before making statements about Root's CAC fails as a matter of law.  (Opposition Br., ECF No. 58 at PageID 1243-45.)  Plaintiff's argument is "devoid of particular allegations regarding what specific factual information Defendants disregarded".  *In re The Goodyear Tire & Rubber Co.*, 436 F. Supp. 2d at 902.  Indeed, Plaintiff does not point to a single specific fact that Defendants were purported to have understood but not disclosed.  Plaintiff merely states that Plaintiff failed to disclose "adverse facts" concerning the CAC.  The specific "adverse facts" to which Plaintiff refers are nowhere in Plaintiff's Complaint.

Further, if Plaintiff had adequately alleged what specific factual information Defendants disregarded (which it did not), Plaintiff's argument is outright contradictory.  The only remotely "adverse fact" fact which Plaintiff pleads regarding Root's CAC that Defendants allegedly knew of leading up to the IPO was that CAC rose in September 2020.  Thus, Plaintiff's contention, if adequately alleged (which it is not), seems to be that Defendants "understood" that Root's CAC spiked in September 2020 but "disregarded" that most current factual information when speaking to investors.  This is contradictory because Plaintiff simultaneously acknowledges that Mr. Timm **disclosed to investors the September 2020 spike in Root's CAC**.  Plaintiff offers no explanation of how Defendants could have "disregarded" information and disclosed that same information during the roadshow.

To the extent that Plaintiff argues that Messrs. Timm and Rosenthal intended to deceive investors by failing to predict a long-term loss of CAC advantage, that argument, too, fails as a matter of law.  Plaintiff has not alleged any specifically pled facts indicating that Messrs. Timm and Rosenthal knew the September 2020 CAC increase (that was disclosed to

investors) was the beginning of a long-term elevation in CAC. That is dispositive. *See, e.g.*, *Lachman*, 487 F. Supp. 3d at 134, 137 (statement regarding "expect[ed] continued improvement going forward" not misleading because "plaintiffs have not pleaded that company executives did *not* expect continued improvement . . . going forward"; no scienter because no allegation that defendants "had knowledge of facts or access to information that contradicted their public statements").

Plaintiff argues that Defendants must have known the future of Root's CAC by "virtue of their roles with the Company". (Opposition Br., ECF No. 58 at PageID 1243.) But Courts are exceedingly clear that scienter may not be imputed based on a defendant's position within a company and general knowledge of the company's operations.[14] *See, e.g.*, *Pittman v. Unum Grp.*, 861 F. App'x 51, 55 (6th Cir. 2021) ("[T]he fact that executives are intimately familiar with a core component of their business does little to suggest fraudulent intent . . . . [T]his is not a scienter-bolstering fact."); *PR Diamonds, Inc. v. Chandler*, 91 F. App'x 418, 442 (6th Cir. 2004) ("Contrary to Plaintiffs' assertions, fraudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information . . . . [T]he Complaint must allege **specific** facts or circumstances suggestive of

---

[14] While Plaintiff cites cases for the proposition that high-level executives are aware of matters central to their businesses' operations (Opposition Br., ECF No. 58 at PageID 1244 (citing *LSPRF*, 2021 WL 4397946, at *16; *Envision Healthcare Corp. Sec. Litig.*, 2019 WL 6168254, at *21-22 (M.D. Tenn. Nov. 19, 2019); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2011 WL 1335803, at *57 (M.D. Tenn. Mar. 31, 2011)), Plaintiff alleges no fact and cites no case for the inference that Messrs. Timm and Rosenthal knew, at the time of the IPO, that their long-term CAC would remain significantly elevated. The same reasoning applies to Plaintiff's reliance on the myriad other cases it cites to support the inference that Messrs. Tim and Rosenthal were aware of, but failed to disclose, certain adverse facts concerning Root's CAC. (Opposition Br., ECF No. 58 at PageID 1243-44.) As explained above, the only adverse fact they could have been aware of was Root's September 2020 CAC spike, which they disclosed.

24

their knowledge." (emphasis added)); *In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211, 228 (D. Mass. 1999) (general allegations that a defendant, through his board membership or executive position, had actual knowledge of false statements or reckless disregard for the truth are insufficient to raise strong inference of scienter).[15]

Finally, even if Defendants did disregard current factual information (which they did not), the Sixth Circuit has affirmed dismissal even where this *and another Helwig* factor supported an inference of scienter but others did not. *See, e.g.*, *Doshi*, 823 F.3d at 1041-42 (no scienter despite "divergence between internal reports and external statements on financial data" and "disregard for the most current factual information").

2.  <u>Plaintiff's argument regarding the timing of Defendants' admissions does not support a strong inference of scienter.</u>

Plaintiff next argues that the amount of time between the issuance of the Registration Statement on October 28, 2020, and subsequent analyst reports on Root's CAC gives rise to a strong inference of scienter. Not so.

As Plaintiff notes, "closeness in time of an allegedly fraudulent statement or omission and the later disclosure of *inconsistent information*" is one of the nine *Helwig* factors supporting a finding of scienter. *Helwig*, 251 F.3d at 552 (emphasis added). But, as explained in Defendants' Opening Brief, the analyst reports to which Plaintiff refers are, in fact, largely **consistent** with what Mr. Timm and Root disclosed **before** the IPO: a short-term spike in customer acquisition costs attributable to Root's plans for national expansion. (Opening Br.,

---

[15] Plaintiff's citations to *South Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248 (W.D. Wash. 2009), in an attempt to establish recklessness, fails because Plaintiff has not established (nor could it) the very premise that Plaintiff admits is critical to *South Ferry*: "when a defendant speaks, but does not have actual knowledge about a subject". (Opposition Br., ECF No. 58 at PageID 1244.) There is no allegation here that any Defendant who made a statement lacked knowledge about the subject of which they spoke.

ECF No. 57 at PageID 937-38 (*comparing* AC, ECF No. 31 at PageID 750, ¶ 124 ("You see the recent spike [in customer acquisition costs]?  That is from some of this experimentation on brand [campaigns]") *with id.* at PageID 52, ¶ 131 (showing November 23, 2020 UBS analyst report chart which indicates a spike in customer acquisition costs during the last quarter of 2020 and 2021); *and id.* at PageID 753, ¶ 132 (quoting November 23, 2020 Barclays analyst report ("CAC is spiking to $660+ near term on the new national TV campaign")); *and id.* at PageID 755, ¶ 136 (quoting December 1, 2020 Truist Securities analyst report (CAC in 4Q20 of $670, up 100% year over year, and in 1Q21 of $704, up 165%)).  Plaintiff, unsurprisingly, does not even attempt to address this point.

The first disclosure containing even plausibly new information came a full *four months* after the issuance of the Registration Statement.  (Opposition Br., ECF No. 58 at PageID 1245 (disclosing that Root has "much work to do in the quarters and years ahead, particularly around . . . managing customer acquisition costs" (quoting AC, ECF No. 31, PageID 755, ¶ 137)).)  Such an extended period cannot support an inference of scienter. *See Doshi*, 823 F.3d at 1042 (stating that an 86-day gap did not allow a scienter inference); *City of Monroe*, 399 F.3d at 687-88 (finding a four-month period not to be probative of scienter); *In re The Goodyear Tire & Rubber Co.*, 436 F. Supp. 2d at 901 (same).[16]

---

[16] Because there was no disclosure containing new information until at least four months after the IPO, Plaintiff's reliance on *Dougherty*, 905 F.3d at 981 (six-week gap), and *LSPRF*, 2021 WL 4397946, at *15 (56-day gap), is misplaced.  (Opposition Br., ECF No. 58 at PageID 1245-46.)  And Plaintiff's reliance on *In re Grand Casinos, Inc. Securities Litigation*, 988 F. Supp. 1273, 1283 (D. Minn. 1997), fails too because, in that case, plaintiffs alleged specific facts strongly suggesting that defendants had knowledge of issues that they hid from investors *at the time they made the challenged statements*.  Here, again, Plaintiff cites no fact suggesting that Mr. Timm knew, at the time of the IPO, that Root could not achieve competitive CAC in the long term.

3.    Plaintiff has failed to show that Defendants had a self-interested
motivation in securing a lucrative IPO.

Plaintiff has not shown that Defendants had a self-interested motivation to

defraud sufficient to support scienter.  To support an inference of scienter under *Helwig*'s ninth

factor, a "[p]laintiff must allege that defendants benefitted in some concrete and personal way

from the purported fraud".  *In re Corrpro Sec. Litig.*, 2003 WL 23138459, at *6 (N.D. Ohio

May 27, 2003), *aff'd sub nom. Stambaugh v. Corrpro Cos., Inc.*, 116 F. App'x 592

(6th Cir. 2004).  "[C]ourts distinguish motives common to corporations and executives generally

from motives to commit fraud."  *PR Diamonds*, 91 F. App'x at 435.  "Th[e] desire [to see one's

company succeed] does not comprise a motive for fraud."  *Id.*; *see also Chill v. Gen. Elec. Co.*,

101 F.3d 263, 268 (2d Cir. 1996) ("[A] generalized motive, one which could be imputed to any

publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring

scienter.").

Here, Plaintiff's only evidence that Defendants had a self-interested motivation is

that Defendants stood to profit from the success of Root's IPO.  That allegation is far from

sufficient to support a strong inference of scienter.  The desire to have a successful IPO is a

"generalized motive" common to all IPO defendants—indeed, Plaintiffs would be hard pressed

to find a corporate executive *not* motivated to have an IPO succeed.  *See Dougherty*, 905 F.3d

at 981-82 ("[G]eneral allegations of an executive's desire to protect his position within a

company or increase his compensation do not comprise a motive for fraud, because such a desire

is shared by all corporate officers." (internal quotation marks omitted)).  Plaintiff alleges no

specific facts indicating a concrete link between Defendants' alleged fraud and a specific

payment.  Thus, Plaintiff's argument fails.  *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455,

484 (6th Cir. 2014) ("If a well-pleaded complaint can allege only that a corporation intended to

defraud based on a desire to . . . earn[] money, without showing a particular link between the actual statement and a specific payment, then the heightened pleading standard for scienter has no bite.").

> 4. <u>Mr. Timm did not make false statements that would demonstrate scienter.</u>

Finally, Plaintiff alleges that Mr. Timm "falsely" stated that Root had the ability to keep its CAC lower than its competitors, providing "evidence of a strong inference of fraudulent intent".  (Opposition Br., ECF No. 58 at PageID 1247.)  That argument fails because Plaintiff has alleged no fact establishing the falsity of that statement, let alone a fact suggesting that Mr. Timm knew it to be false.  As explained above, *supra* Section III, Plaintiff only creates an impression of potential falsity by misquoting Mr. Timm.

Plaintiff's argument that Mr. Timm's "failure during the roadshow to disclose the true reason for the spike in CAC" similarly fails, primarily because Mr. Timm *did* disclose what Plaintiff claims to be the reason for the spike:  Root's attempted national expansion.  (*See* AC, ECF No. 31 at PageID 750, ¶ 124 ("You see the recent spike [in customer acquisition costs]?  That is from some of this experimentation on brand [campaigns].").)  Plaintiff pled no facts to suggest that Mr. Timm expected a long-term spike in CAC warranting disclosure during the roadshow.  Thus, Plaintiff's cited cases are inapposite.  *See Sanchez v. Centene Corp.*, 407 F. Supp. 3d 831, 836-37 (E.D. Mo. 2019) (stating there had been "no unfavorable development" regarding the reserves of an acquisition when defendants admittedly knew of its increased liabilities); *Setzer v. Omega Healthcare Invs.*, *Inc.*, 968 F.3d 204, 215 (2d Cir. 2020) (failing to disclose that its top tenant was unable to pay rent when defendant knew that tenant was paying rent with a loan defendant had provided).

### C.     Plaintiff's New Scheme Liability Theory Fails, Too.

In its Opposition Brief, Plaintiff claims to have pleaded scheme liability in the Complaint.  Plaintiff further contends that, by failing to address that theory, Defendants have waived their opportunity to do so.  In fact, Plaintiff *did not* plead scheme liability in the Complaint.  But, regardless, Defendants *did address* the allegations that Plaintiff now claims give rise to scheme liability because those allegations are one and the same as the purported misstatement and omission allegations.  Accordingly, Plaintiff's *sub rosa* scheme liability claim also fails as a matter of law.

#### 1.     Plaintiff did not plead scheme liability in the Complaint.

As Defendants explained in their Opening Brief, "Section 10(b) makes it unlawful '[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.'"  *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1028 (8th Cir. 2011) (alterations in original) (quoting 15 U.S.C. § 78j(b)).  "Rule 10b-5 implements the provisions of Section 10(b)."  *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 980 (8th Cir. 2012).  A Rule 10b-5 claim may be based on a failure to disclose under 10b-5(b), or based on a theory of scheme liability under 10b-5(a) and 10b-5(c).  *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 610 (6th Cir. 2005).  But, importantly, the provisions of 10b-5 give rise to distinct claims that are not to be conflated.

"[A] scheme liability claim must be based on conduct beyond misrepresentations or omissions actionable under Rule 10b-5(b)."  *Pub. Pension Fund Grp.*, 679 F.3d at 987; *see also WWP Luxembourg*, 655 F.3d at 1057 ("A defendant may only be liable as part of a fraudulent scheme based upon misrepresentations and omissions under Rules 10b-5(a) or (c)

when the scheme also encompasses conduct beyond those misrepresentations or omissions."); *Lentell v. Merrill Lynch & Co*., 396 F.3d 161, 177 (2d Cir. 2005) ("[W]here the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim under Rule 10b-5(a) and (c)."). In *WWP Luxembourg*, for example, the Ninth Circuit upheld the dismissal of a scheme liability claim based on defendants' "participat[ion] in the scheme by failing to disclose [] sales" because the plaintiff did not "allege any facts that are separate from those already alleged in their Rule 10b-5(b) omission claims". 655 F.3d at 1058. In doing so, the Court "emphasized the importance of maintaining a distinction among the various Rule 10b-5 claims from one another". *Id.* at 1057.

Here, Plaintiff has not alleged in the Complaint a theory of scheme liability that is distinct from its misrepresentation or omission claims. None of the purported scheme liability allegations cited in Plaintiff's Opposition refers to conduct different from the alleged Rule 10b-5(b) violations. Rather, each mention of the "fraudulent scheme" is made with a vague reference to the allegedly false or misleading communications described elsewhere in the Complaint. Further, nowhere in the Opposition Brief is it articulated what exactly the alleged "scheme" is, and nowhere is any specific conduct pled amounting to a deceptive scheme—apart from supposedly untrue or misleading public statements. *See In re Firstenergy Corp.*, 2022 WL 681320, at *13 ("Where a complaint alleges a complex and far-reaching fraudulent scheme, then that scheme must be pleaded with particularity and the complaint must also provide examples of specific fraudulent conduct that are representative samples of the scheme." (internal quotation marks omitted)).

Plaintiff, perhaps having realized its 10b-5(b) misstatement/omission theory to be weak, nevertheless tried to rely on a new theory that it did not plead. "However, it is axiomatic

that the complaint may not be amended by the briefs in opposition to a motion to dismiss."
*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Tellingly, Plaintiff
mentions neither Rule 10b-5(a) or (c) specifically, nor "scheme liability" generally, in the
Complaint; both appear for the first time in Plaintiff's Opposition. (Opposition Br., ECF No. 58
at PageID 1203, 1239); *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)
(dismissing for failure to state a claim where misrepresentation claim "did not enter the case until
[the plaintiff] mentioned it for the first time in her opposition memoranda to the motion to
dismiss").

Plaintiff incorrectly asserts that Defendants have "waived" any challenge to
Plaintiff's scheme liability claim (which, again, Plaintiff did not even plead) by failing to address
the claim in Defendants' Opening Brief. (Opposition Br., ECF No. 58 at PageID 1240.) In
support of the proposition that "numerous" courts have recognized such a waiver, Plaintiff cites
four cases from district courts in Tennessee. None of those cases help Plaintiff here (nor would
they be controlling for this Court even if they did). Unlike Plaintiff, the plaintiffs in the
Tennessee cases actually articulate specific scheme liability allegations beyond mere omissions
or misrepresentation—in other words, those plaintiffs actually pled scheme liability.[17] Because

---

[17] *See St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2021 WL 195370,
at *1 (M.D. Tenn. Jan. 20, 2021) (describing scheme to "achieve[] growth by inadequately
staffing facilities and cutting costs to extract higher profits at the expense of patient care and
safety"); *Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*, 2021 WL 1316705, at *1 n.4 (M.D. Tenn.
Apr. 8, 2021) (describing a "deceptive sales and marketing scheme" in which plaintiffs operated
fake websites and call lines to "drive . . . reported revenue growth"); *Jackson Cnty. Emps.' Ret.
Sys. v. Ghosn*, 510 F. Supp. 3d 583, 598 (M.D. Tenn. 2020) (describing CEO's unlawful scheme
to increase his pay by approving deferred compensation for himself); *Teamsters Loc. 237
Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 2022 WL 989240, at *14 (W.D. Tenn.
Mar. 31, 2022) ("Lead Plaintiff uses the word 'scheme' to describe Defendants' conduct forty-
six (46) times in the Amended Complaint").

Plaintiff has alleged no conduct amounting to an actual fraudulent scheme, those cases are irrelevant.

      2.    <u>Defendants nonetheless refuted the allegations that Plaintiff now claims give rise to scheme liability.</u>

Despite Plaintiff's failure to plead a scheme liability claim, Defendants nonetheless addressed the allegations that Plaintiff now claims give rise to scheme liability.

*First*, Defendants addressed the purported misstatements and omissions in their Opening Brief, which is the only specific conduct that the Complaint could be read to allege to be a scheme.  (Opening Br., ECF No. 57 at PageID 914-34; AC, ECF No. 31 at PageID 767, ¶ 198.)

*Second*, as explained above and in Defendants' Opening Brief (*supra* pp. 21-29; Opening Br., ECF No. 57 at PageID 935-38), Defendants refuted scienter by showing that Plaintiffs failed to allege facts generally showing intent to deceive.  *See WWP Luxembourg*, 655 F.3d at 1048 (noting that scienter is a requirement of all Section 10(b) securities fraud claims); *In re Firstenergy Corp.*, 2022 WL 681320, at *8 ("Both [misstatement and scheme liability] theories also demand a 'particular state of mind,' *i.e.*, scienter.").

Thus, even if Plaintiff actually pleaded scheme liability (which it did not), such a claim would fail for the same reasons as Plaintiffs' other Section 10(b) theory.

## V.    PLAINTIFF'S CONTROL PERSON CLAIMS UNDER SECTION 15 OF THE SECURITIES ACT AND SECTION 20 OF THE EXCHANGE ACT SHOULD BE DISMISSED

Plaintiff's control person claims fail for the same reason as explained in the Opening Brief:  Plaintiff fails to state a predicate violation of the Securities Act or Exchange Act. (Opening Br., ECF No. 57 at PageID 938-39.)  Plaintiff's Opposition Brief adds nothing new,

and its contention that Defendants have conceded anything is false.  Accordingly, the Section 15 and Section 20 claims should also be dismissed.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety and with prejudice.

Respectfully submitted,

/s/ William D. Kloss, Jr.
William D. Kloss, Jr., Trial Attorney (0040854)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215-1008
Tel:  (614) 464-6360
wdklossjr@vorys.com

J. Wesley Earnhardt (*pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel:  (212) 474-1000
wearnhardt@cravath.com

*Attorneys for Defendants Root, Inc., Alexander Timm, Daniel Rosenthal, Megan Binkley, Christopher Olsen, Doug Ulman, Elliot Geidt, Jerri DeVard, Larry Hilsheimer, Luis von Ahn, Nancy Kramer, Nick Shalek and Scott Maw*

/s/ Gregory A. Harrison
Gregory A. Harrison, Trial Attorney (0029814)
Kelly E. Pitcher (0093678)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Tel:  (513) 977-8200
greg.harrison@dinsmore.com
kelly.pitcher@dinsmore.com

Sharon L. Nelles (*pro hac vice*)
Andrew J. Finn (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel:  (212) 558-4000
nelles@sullcrom.com
finna@sullcrom.com

*Attorneys for Defendants Goldman Sachs & Co. LLC,
Morgan Stanley & Co. LLC, Barclays Capital Inc.
and Wells Fargo Securities, LLC*

## Appendix A

| | Statements Cited in the Amended Complaint | |
|---|---|---|
| **Claim(s)** | **Statement** | **Reason Not Actionable** |
| **Sections 11 and 12(a)(2)** (Registration Statement) | "*<u>Over time</u> we <u>believe</u>* the ongoing data we accumulate through growth *<u>will fuel</u>* a pricing advantage for target customers, driving improved conversion and a *<u>cost of acquisition advantage</u> in all channels*." (AC ¶ 106; RS at 2, 106)[1] | Statement of future belief not incorrect when made and not misleading, and risk of contrary results was disclosed (Opening Br. at 15, 20-22; Reply Br. at 4-5)<br><br>Unactionable pursuant to the bespeaks caution doctrine because the statement is forward looking and was accompanied by meaningful cautionary language (Opening Br. at 23-25; Reply Br. at 11-14)<br><br>Unactionable opinion because it addresses Root's belief about its future performance (Opening Br. at 25; Reply Br. at 13-15)<br><br>Unactionable puffery because assessments of competitive advantage are textbook examples of loosely optimistic statements insufficiently specific for a reasonable investor to find them material  (Opening Br. at 26-27; Reply Br. at 15-16) |
| | "Through our hyper-targeted, data-driven and ever-improving performance marketing capabilities, we *<u>have been</u>* able to *acquire customers for below the average cost of doing so through each of the direct and agent-based channels*."  (AC ¶ 106; RS at 6, 113) | Statement of past performance not alleged to be incorrect and not misleading, thus creating no duty to disclose additional information (Opening Br. at 13-15; Reply Br. at 3-6, n.4) |
| | "We therefore designed a mobile-directed customer acquisition strategy, *delivering customer acquisition costs below the average cost of doing so through each of the direct and agent channels*[.]"  (AC ¶ 106; RS at 120) | Statement of past performance not alleged to be incorrect and not misleading, thus creating no duty to disclose additional information (Opening Br. at 13-15; Reply Br. at 3-6, n.4) |
| | "*The efficiency of our customer acquisition strategy <u>has resulted</u> in a cost of acquisition advantage versus direct and agent channels.  While our customer acquisition costs can vary by channel mix, by state or due to seasonality, over the period <u>from August 2018 to August 2020 our average customer acquisition cost was $332</u>.*  (AC ¶ 106; RS at 120) | Statement of past performance not alleged to be incorrect and not misleading, thus creating no duty to disclose additional information (Opening Br. at 13-15; Reply Br. at 3) |
| | "[W]e intend to increase our presence in digital and traditional channel media and launch a national advertising campaign to build our brand awareness."  (AC ¶ 108; RS at 83) | Statement of future intent not alleged to be incorrect and not misleading, thus creating no duty to disclose additional information (Opening Br. at 17-18; Reply Br. at 6-11) |

---

[1] Emphasis of quoted language is that of Defendants.

| | | |
|---|---|---|
| | "In the _near term_, as we expand our licensed footprint to 50 states, *we will invest in our national brand*, which will increase awareness, build credibility and support all four of our distribution channels. Furthermore, we continue to invest in the technology and data science behind our distribution with A/B tests, dynamic bidding models, and rapid updates and iterations, supporting differentiated cost of customer acquisition over the long term." (AC ¶ 108; RS at 120)[2] | Statement of future intent not alleged to be incorrect and not misleading, thus creating no duty to disclose additional information (Opening Br. at 17-18; Reply Br. at 6-11) |
| | "As we grow, we may struggle to maintain cost-effective marketing strategies, and our customer acquisition costs could rise substantially." (AC ¶ 110; RS at 27) | Statement of risk not incorrect and not misleading, thus creating no duty to disclose additional information (Opening Br. at 18-19, 21, 24; Reply Br. at 8-11) |
| **Section 12 only** (Roadshow) | "On slide 19 you'll also see *we do believe that becoming a _national brand_ is important* and we do believe we can do that in a very differentiated way that is not gimmicky. So really Root is based on fairness. What you see here, on the left side of slide 19, is a bit of a taste for our brand. _Judge me by the way I drive, not my job. Age is just a number. Phillip isn't. root's all about you._ Those are some *brand campaigns that we're going to be experimenting with*. We don't believe we will ever be at the level of brand spend of a Geico or Progressive. We think we'll always be more performance oriented, but we also believe that there still is value to becoming a recognized brand and so *we will intelligently experiment with the brand channel*." (AC ¶ 124) | Statement of future intent not incorrect and not misleading, thus creating no duty to disclose additional information (Opening Br. at 31; Reply Br. at 18-20) |
| | "And you can see the results on the right-side of the page. *Our customer acquisition cost has maintained well below the direct average and so we really are more competitive. You see the recent spike? That is from some of this experimentation on brand* that you see over here on the left side of the page. And again, *we're constantly testing new marketing channels and we'll continue to do that short term*. But *we believe – and we've seen long term – that we do have the ability to keep our customer acquisition costs much lower than our competitors*." (AC ¶ 124) | Statement of past performance not alleged to be false or misleading, thus creating no duty to disclose additional information (Opening Br. at 31-32; Reply Br. at 18-20)<br><br>Statement of future belief not incorrect when made and not misleading (Opening Br. at 32; Reply Br. at 18-20)<br><br>Unactionable opinion because it addresses Root's belief about its future performance (Opening Br. at 32; Reply Br. at 18-20)<br><br>Unactionable puffery because assessments of competitive advantage are textbook examples of loosely optimistic statements insufficiently specific to be material (Opening Br. at 32; Reply Br. at 18-20) |
| **Section 10(b)** | *Same statements as above* | |

---

[2] The Opposition Brief clarifies that the Complaint does not allege the second sentence of this statement to be misleading. (Opposition Br. at 15.)

| Alleged Omissions (pertaining to all claims) | |
|---|---|
| **Alleged Omissions** | **Reason Not Actionable** |
| "Defendants failed to disclose that Root's customer acquisition costs had significantly increased as of the IPO, and would remain elevated thereafter, thereby negatively impacting Root's operations and financial performance, because Root had substantially boosted its marketing expenditures as part of the Company's expansion throughout the United States."  (AC ¶¶ 107 (Section 11), 126, 129 (Section 12))[3] | Defendants' accurate disclosure of Root's historical customer acquisition costs did not create a duty to disclose Root's September 2020 spike in customer acquisition costs.  (Opening Br. at 13-15; Reply Br. at 2-4, 6-7)<br><br>Root's September 2020 spike in customer acquisition costs due to its national marketing campaign was disclosed to investors.  (Opening Br. at 16, 31; Reply Br. at 5, 23)<br><br>Plaintiff fails to allege that a one-month increase in customer acquisition costs meant that, at the time of the IPO, Root's long-term average customer acquisition costs had materially increased.  (Opening Br. at 15; Reply Br. at 4-5)<br><br>The Registration Statement disclosed that Root was engaging in a national marketing campaign that would invariably raise its customer acquisition costs in the short term and that its customer acquisition costs might remain elevated in the long term.  (Opening Br. at 17-19; Reply Br. at 6-9) |
| "Root's elevated customer acquisition costs meant the Company possessed no competitive advantage on this basis over traditional insurers, thereby negatively impacting Root's financial operations and performance." (AC ¶¶ 107 (Section 11), 126, 129 (Section 12))[4] | Plaintiff's allegations regarding Root's "competitive advantage" are one and the same as Plaintiff's allegations related to customer acquisition costs and, thus, fail for the same reasons.  (Opening Br. at 27-28; Reply Br. at 16)<br><br>Plaintiff fails to allege any facts suggesting that Root did not have a competitive advantage in customer acquisition costs as compared to other channels.  (Opening Br. at 28; Reply Br. at 16-17)<br><br>Plaintiff fails to allege any facts suggesting that Root's short-term increase in customer acquisition costs meant that Root could not, in the long-term, maintain competitively low customer acquisition costs.  (Opening Br. at 29; Reply Br. at 16-17, n.12)<br><br>Prospective assessments about competitive advantage are unactionable as forward-looking statements, statements of opinion and statements of puffery.  (Opening Br. at 29; Reply Br. at 16-17, n. 12) |

[3] *See also* AC ¶ 109 ("Defendants failed to disclose that Root's plan to expand throughout the United States had already caused Root's customer acquisition costs to significantly increase as of the IPO, which would remain elevated thereafter, thereby negatively impacting Root's operations and financial performance."); AC ¶ 118 ("[T]he Registration Statement failed to disclose that . . . Root's customer acquisition costs had significantly increased as of the IPO, and would remain elevated thereafter, because Root had substantially boosted its marketing expenditures as part of the Company's expansion throughout the United States[.]"); AC ¶ 121 (same); AC ¶ 123 (same)

[4] *See also* AC ¶ 118 ("[T]he Registration Statement failed to disclose that . . . Root's elevated customer acquisition costs meant that the Company possessed no competitive advantage on this basis over traditional insurers."); AC ¶ 121 (same); AC ¶ 123 (same)

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a copy of the foregoing was electronically filed with the Court on August 1, 2022.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

<u>/s/ William D. Kloss, Jr.</u>
William D. Kloss, Jr. (0040854)
